[Crim. No. 3489. Second Dist., Div. Two. Nov. 27, 1941.]

THE PEOPLE, Respondent, v. CLYDE STODDARD, Appellant.

Leigh H. Hill and Morse Craig for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

MOORE, P. J.—Defendant appeals from judgments convicting him of receiving stolen property and from an order denying his motion for a new trial. The basis of his appeal is that since the evidence proved his guilty participation in the thefts, he could not be guilty of receiving what he had stolen.

He was accused of three separate felonies, each of which is receiving property known by him to have been stolen from three separate parties. He was convicted by the jury on all counts. He was sentenced to the state prison for the term prescribed by law, the sentences to run consecutively. After hearing, his motion for a new trial was denied.

The record discloses that one Donald Stewart in association with Dave Boyle, Bob Jetton, Gordon Foster, George Davis, Max Ferguson and Johnny Gunnals, on or about March 10, and divers dates prior thereto, was engaged in the business of stripping automobiles of their tires, wheels, radios, tools and other accessories. They participated in some 600 such transactions. During the course of their enterprise, they arranged with defendant to sell for them all of the goods so stolen. Pursuant to such arrangement, many parts of automobiles and accessories were received by defendant from Stewart and his accomplices and sold by

defendant for the benefit of all parties concerned. They took from the Ford coupé of Mr. Lamb tires and wheels (count 1). They took from the Pontiac of Mr. Feher tires and wheels (count 2); they took from the Ford coupé of Mr. Winchell electrical carpentry equipment. Some of the stolen goods were stored by them in a garage on Main Street in the city of Los Angeles for the purpose of concealing their stolen goods. Other parts were concealed in a shack on Western Avenue. Stewart and associates conferred with defendant about March 10, 1941, for the first time. At that time defendant promised Stewart that he would take over any tires, wheels, radios, fog lights and other stolen parts; that he "would try to get rid of it for us"; that he would pay $7 for each radio; that appellant would give Stewart and his associates orders to fill, designating sizes he wanted and that defendant would pay them $5 for each wheel, tire or fog lamp, reserving $1 thereof for himself. The tires taken from Mr. Lamb's coupé with other equipment were stored in the Main Street garage from which they were delivered to defendant. In a conversation relative to the last mentioned merchandise, defendant told his confederates that he would try to sell it for them. In order to make delivery of those items to defendant, the latter procured the use of a De Soto automobile with which Stewart and associates transported the goods from the garage to defendant. With reference to the equipment taken from the Winchell car, defendant promised that he would dispose of it for Stewart and associates. They put the tools in Gunnal's car from which they removed them to the De Soto which defendant drove away.

At the time of delivering the Winchell equipment into the De Soto car, defendant promised that he would let them know as to the value on the following day. During the time of his operations with defendant, Stewart received between $700 and $800 from defendant. Other sums were paid to Stewart's associates. Defendant visited the apartment of David Boyle where he told Mrs. Boyle that he wished to get a certain amount of tires and radios. At that time Boyle promised to get them on the following night. He came to the apartment on another occasion and asked Boyle if he had obtained other radios. Mrs. Boyle witnessed the payment of moneys by defendant to her husband four or five times

in their apartment. At each call he designated to Boyle what radios he wished and how many he should get.

Upon the arrest of Stewart in his apartment by the deputy sheriff, Stewart's telephone rang and the deputy answered defendant's inquiry "when he could get the stuff." Pursuant to an engagement thereupon made with defendant by the deputy, another officer was sent to the cocktail bar of the Seminole Hotel where defendant was arrested and brought back to Stewart's apartment. In answer to questions propounded by the officer, defendant denied all knowledge of Stewart and his associates; denied that he had ever seen any of them before and stated that his telephonic inquiry was for the purpose of procuring two guns which the boys had wanted him to sell. They drove him to various places with the view of obtaining further information and finally arrived at a place west of Vermont Avenue, which defendant admitted was his residence and thereupon delivered the keys to the garage and the house. The landlady there stated that defendant was living with a woman who was supposed to be his wife; that he had represented himself to be a salesman for some large oil company; and that she had seen numerous cars go into the garage.

Defendant's contention that there was a fatal variance between the pleadings and the proof cannot be sustained. He bluntly argues that the evidence proved a conspiracy on the part of himself and his confederates to steal the effects with the receipt of which he is charged, and that therefore he was a principal and could not have been guilty of stealing from himself. In support of this contention, reliance is placed upon *In re Morton,* 179 Cal. 510 [177 Pac. 453], and *People* v. *Williams,* 7 Cal. App. (2d) 600 [46 Pac. (2d) 796]. Those cases have no application. It is a principle of daily application that where a number of persons conspire to do an unlawful act each is criminally responsible for the acts of his confederates committed in the prosecution of the enterprise for which the combination has been effected. (*People* v. *Creeks,* 170 Cal. 368 [149 Pac. 821]; *People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555].)

But the facts before us present an additional angle. Defendant was not charged with grand theft. The accusation brought against him was that of receiving stolen property. In not a single instance of the hundreds of thefts

participated in by Stewart and his gang did defendant take from the possession of the owner a single item of the stolen property. Inasmuch as he took no actual part in the asportation of the effects from the dominion of the lawful owners, he was properly accused of having received the property which had been stolen by his confederates. (*People* v. *Taylor*, 4 Cal. App. (2d) 214 [40 Pac. (2d) 870].) While it is true that he could not have received from himself the fruits of his own larceny yet his failure to participate in the actual asportation left him in the position feloniously to receive the stolen property from his companions in crime. Although the evidence would have warranted the charge of theft upon the theory that the defendant was an accessory thereto, still he was guilty of receiving stolen property taken and asported by his confederates. (*People* v. *Day*, 30 Cal. App. 762, 763 [159 Pac. 457].)

The judgments and order are affirmed.

McComb, J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 22, 1941.