[Crim. No. 8103. Second Dist., Div. Four. Oct. 31, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES LUTHER TATUM, Defendant and Appellant.

Donald D. Roff, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Woodruff J. Deem, District Attorney (Ventura County), John R. Hetland, Robert K. Garst and Edwin L. Laing, Deputy District Attorneys, for Plaintiff and Respondent.

BURKE, P. J.—On November 7, 1960, the police received a report that a 21-foot house trailer had been stolen from the property of its owner near Lancaster, California. On November 10, 1960, the stolen trailer was discovered in Moorpark, California, parked behind a house, trees, shrubbery and a fence, about 200 feet back from the road, on a lot owned by defendant's father. It could be seen only by coming onto the property. The license plate and serial number plaque had been removed from the trailer and state and national park decals had been scraped off the windows. The trailer had been

connected to water and electricity and it was apparent that it had recently been lived in. The trailer owner's personal effects had been removed and placed in a trash pile near the parked trailer and some of the food which had been left in the trailer by its owner had been consumed. The owner testified the trailer had been taken from its location and used without his knowledge or consent.

Defendant was tried and acquitted in Los Angeles County on a charge of stealing the trailer. Thereafter an information was filed charging him in the first count with the crime of receiving stolen property, the trailer, and in a second count with concealing the same trailer in violation of section 496, subdivision 1, Penal Code, which proscribes knowingly receiving, or concealing and withholding, stolen property. The first count was dismissed and the jury returned a verdict of guilty to the count of concealing and withholding. Defendant's motion for new trial was denied and he was sentenced to the state prison for the term prescribed by law. This is an appeal from the judgment and order denying motion for new trial.[1]

Testimony at the trial of the concealing charge presented three versions to the jury concerning how the trailer got to its location on defendant's father's property. Each of the versions support the inference that it had been stolen by someone.

Police Officer Edson testified as to the location and condition of the trailer when it was discovered in Moorpark. He said that following his arrest defendant told police officers he had purchased the trailer from a "Larry Jackson" for $1,000, having paid $300 down with the balance due in monthly installments. He said he met Larry Jackson "up north" where Jackson was working for defendant's brother. Defendant told officers he did not know where he was to make the monthly payments due on the balance of the purchase price, nor could he produce a bill of sale at the time of the interview. Later he produced a purported bill of sale. Defendant stated to the officers that at the time he purchased the trailer it did not have a license or registration papers and he supposed it was stolen property when he purchased it.

At a later date defendant repeated essentially the same story to other police officers. At this time he stated further that he had asked his father to make some of the payments for him. Defendant's father testified defendant had told him he

---

[1]The order denying motion for new trial is nonappealable. (Pen. Code, § 1237.)

purchased the trailer but he did not recall any request by his son for him to make any of the payments. Defendant's father further testified that, while he did not see who parked the trailer, the only person he ever observed near the trailer was his son.

Defendant abruptly changed his story on September 1, 1961, when he told police officers he had nothing to do with the stolen trailer and that his former story of having purchased it was concocted to protect his father and brother. In support of this changed position a letter was read into evidence on defendant's behalf which was purported to have been written by defendant's father to defendant's attorney. The letter, dated September 18, 1961, denied defendant had ever stated to his father that the trailer was his. Defendant's father testified that the letter had been written by defendant's sister as a result of a letter received by her from defendant requesting such a letter. Defendant's father admitted that he had signed the letter but he stated he had not read it before signing.

Another version of the facts was presented by the testimony of Judy Ross, defendant's paramour, who was granted immunity from prosecution and compelled to testify as one of the prosecution's witnesses. She testified that she and defendant had been looking for a trailer to steal when they came upon the trailer in question near Lancaster. They attached the trailer to their car and brought it to defendant's father's property where they parked it. She stated she cleaned the trailer out, removed the owner's personal effects and scraped the decals off the windows. She testified however that she did not remove the license or serial number plaques.

The third version was given by defendant's brother who was the only witness for the defense. He testified he was the person who had stolen the trailer, parked it on his father's lot and removed the license and identification material. He said he told his father he purchased it for a rental and did not reveal to defendant that he had stolen the trailer until after they had traveled from Moorpark to Sacramento. They did not return to Moorpark until after the trailer had been discovered and returned to its owner.

The court instructed the jury: "... if the defendant charged with concealing or withholding stolen property is found to be the thief, it is necessary for the People to prove that the defendant committed acts or omissions amounting to concealment or withholding of the property from its owner after the completion of the asportation or transportation of the

property immediately connected with the perpetration of the theft of the property.'' This instruction would enable the jury to find defendant guilty of concealing and withholding property which he himself had previously stolen.

 Clearly a thief may not be convicted under section 496, subdivision 1 of the Penal Code of ''buying'' or ''receiving'' the goods which he has previously stolen (see e.g. *People* v. *Jacobs,* 73 Cal.App. 334, 341 [238 P. 770]; *People* v. *Bausell,* 18 Cal.App.2d 15, 18 [62 P.2d 774]), with the possible exception of the situation where the thief has disposed of the property and subsequently received it back in a transaction separate from the original theft. (See *People* v. *Kot,* 171 Cal. App.2d 9, 14 [339 P.2d 899].) Whether or not he may be adjudged guilty of violating that section by reason of concealing or withholding such property following his theft of it, a question not heretofore decided in this state, is the problem presented here.

 Section 496 provides that (1) ''Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the same to be so stolen or obtained, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year.'' In our view, this section is directed at those who knowingly deal with thieves and with their stolen goods after the theft has been committed. In other words, it is directed at the traditional ''fence'' and at those who lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot. Such offenses are essentially different from the actual theft of property prohibited by section 484. Every theft, every wrongful misappropriation, of necessity, contemplates and involves a permanent withholding from the owner. To conceal and withhold is the thief's purpose from the very moment that he gains possession of the property. It is part and parcel of the theft. But such concealment and withholding is not that envisaged by section 496. If the Legislature had intended in that section to embrace concealment of stolen property by the thief, it would have been a simple matter to say ''every thief or any other person . . . who conceals, etc.''

It is apparent that other sections in the penal code section in the 496 series (§§ 496-496c) are directed principally at

activities of others than the thief and which take place subsequent to the actual theft of the property. Experience has shown that by cutting off the "fence" a major obstacle is placed in the path of encouraging thefts as a profitable venture. These sections are patently designed to accomplish that objective, as can be seen by a cursory reading thereof. They make clear that in the eyes of the law the "fence" is more dangerous and detrimental to society than is the thief for "receiving" or "concealing" of stolen goods and draws the heavier maximum penalty. To view these sections otherwise, to consider both the theft and the receiving or concealing sections as being aimed at the thief, would lead to anomalous results. For instance, a thief who steals under $200 may be convicted under section 484 of the theft but the punishment would be limited by section 490 to a $500 fine or maximum imprisonment in the county jail for six months, or both. Yet the same thief, if convicted under section 496 of "concealing" his booty would be subject to imprisonment in the state prison for a period up to ten years. These conflicts and untoward results are avoided, leaving the underlying purposes unimpaired, by construing section 496 as a statute directed primarily at persons who do not physically participate in the actual theft of property.

A defendant may, of course, be charged with both crimes, but it is for the trier of fact to determine whether he is guilty as a thief or as a non-thief of concealing and withholding. Similarly, this view is in harmony with certain receiving cases wherein it is held that an accessory of the thief who receives the stolen property may be tried either for receiving or as a principal for the theft. (See *People* v. *Stoddard*, 48 Cal.App.2d 86, 90 [119 P.2d 160].) As in the *Stoddard* case, the failure of the accessory to participate in the actual caption and asportation of the property would be the distinguishing feature. This result is consistent with the view, noted above, that section 496 is aimed principally at those who aid the thief in ways other than the actual taking.

We conclude that, in the absence of facts indicating a complete divorcement of the concealing activities from the course of conduct of the thief in the initial concealing of the property stolen by him, a thief may not be found guilty of concealment in violation of section 496, subdivision (1). (Accord: *People* v. *Daghita*, 301 N.Y. 223 [93 N.E.2d 649].)

In the instant case a review of the testimony reveals there was no evidence of concealment independent of that

involved in the theft. In the absence of such evidence it was error to instruct the jury that they could find defendant guilty of concealment even though they believed he had stolen the trailer.

Had there been evidence of acts of concealment entirely separate and apart from the theft and sufficiently removed therefrom to constitute an independent course of conduct, then an instruction which clearly spelled out such distinction could properly have been given.

The People assert that dictum in *People* v. *Foogert,* 85 Cal. App.2d 290, 301 [193 P.2d 14], is tailor made to sustain the conviction in the case at bar. An analysis of the decision leads to the conclusion that, as respects the present case, it refutes rather than sustains the People's position and presents an independent ground for the conclusion we have reached. In *Foogert* the court stated ''While in a proper case it might be held that the thief could also be guilty of a violation of section 496bb [now § 496, subd. 1] by reason of affirmative acts of concealment occurring subsequent to the theft and constituting a new and distinct offense on the analogy that a thief may be guilty of driving the car without the owner's consent as an offense separate from the theft (See *People* v. *Cuevas,* 18 Cal.App.2d 151 [63 P.2d 311]), in view of the entire record here it is unnecessary to decide the point.'' In *People* v. *Cuevas,* 18 Cal.App.2d 151 [63 P.2d 311], the analogy given to support the dictum in the *Foogert* case, *supra,* the defendant was found guilty of driving the car without the owner's consent at a time three years after the theft had occurred. In the present case, a period of three days elapsed between theft of the trailer and its discovery by the police. Therefore, any acts of concealment necessarily occurred within the three days. This disparity in time lapse distinguishes the present case from the dictum in *Foogert,* since the analogous *Cuevas* case has been distinguished on the same basis in *People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321]. In *Kehoe,* the court held that a thief could not be convicted of theft of an automobile *and* of driving it without permission of the owner where the arrest while driving the car occurred one week after theft of the car.

The rationale of the *Kehoe* case is based on section 654 of the Penal Code. This section recites: ''An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than

one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ." Thus, it was stated in *Kehoe* "Obviously the [applicable] statutes are a part of a general legislative plan of protection and punishment conceived to prevent the taking or use of an automobile without the owners' consent. Different punishment is fixed to correspond with the intent with which each offense is committed, but the legislation is directed at one evil. Insofar as they relate to a single act [violations of different sections of the Penal Code] may subject the offender to but one punishment." (*People* v. *Kehoe,* 33 Cal.2d 711, 714 [204 P.2d 321].)

 Section 654 is equally applicable to bar subsequent prosecution of the thief for concealment where concealment of his booty is an incident of the theft. "Section 654 has been applied not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654." (*People* v. *Brown,* 49 Cal.2d 577, 591 [320 P.2d 5].)

 "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal* v. *State of California,* 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) Indeed, the People concede a *conviction* for theft in violation of section 484 would bar conviction for concealing under section 496. The reason one could not be convicted for both offenses is that the concealment upon stealing the property is part of the "act" of theft proscribed by section 484 so that further grounds for convictions are removed by section 654 and considerations of double jeopardy.

 While an acquittal on the theft charge does not have the effect of a judicial determination that defendant is not the thief[2] its effect is the same as a conviction insofar as barring a further prosecution for the immediate concealment of

---

[2] " 'The acquittal was merely . . . an adjudication that the proof was not sufficient to overcome all reasonable doubt of the guilt of the accused.' " (*In re Anderson,* 107 Cal.App.2d 670, 672 [237 P.2d 720]; see *Helvering* v. *Mitchell,* 303 U.S. 391, 397 [58 S.Ct. 630, 83 L.Ed. 917]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601 [25 Cal.Rptr. 559, 375 P.2d 439].)

the stolen property which is attendant to the theft is concerned. This is the mandate of section 654's injunction against harassment through multiple prosecutions. Any other result is inconsonant with the rule against double jeopardy (Cal. Const., art. I, § 13), and the limitations of section 654, Penal Code.

 The instruction quoted above was inappropriate under the evidence presented. The defendant was seriously prejudiced thereby on the trial and the conviction cannot stand.

Judgment of conviction is reversed and the purported appeal from denial of the motion for new trial is dismissed.

Jefferson, J., and Ford, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 26, 1962. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.