[Crim. No. 7489. Third Dist. Nov. 25, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
LUPE VACON ADAMS, Plaintiff and Appellant.

## COUNSEL

Patrick A. McAravy and James M. O'Brien under appointments by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller and Peter J. McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, J.**—Defendant was convicted by jury of a violation of Penal Code section 496. The exact language of subdivision 1 of that provision is involved in the issues on appeal and accordingly is set out verbatim:

"1. Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year; provided, that where the district attorney or the grand jury determines that such action would be in the interests of justice, the district attorney or the grand jury, as the case may be, may, if the value of the property does not exceed two hundred dollars ($200), specify in the accusatory pleading that the offense shall be a misdemeanor, punishable only by imprisonment in the county jail not exceeding one year."

Defendant's contentions on appeal may be summarized as follows: (1) the refusal to subpoena certain witnesses violated defendant's statutory and constitutional rights to call witnesses in a criminal case; (2) defendant was not afforded adequate time in which to prepare for trial on the amended information; (3) defendant's trial counsel was incompetent; (4) Penal Code section 496 is unconstitutional and; (5) the sentence imposed is unconstitutionally excessive.

We shall consider defendant's contentions after summarizing the facts of the case which are pertinent to the appeal.

### FACTS

On the afternoon of August 30, 1973, defendant, together with two children, was in Judy's Apparel Shop in Roseville. They were in the store

about 10 or 15 minutes. The proprietress did not watch the children as they moved about in the store but she watched defendant. The children left the store and defendant left shortly thereafter. Just before he left he purchased one item, a ladies' handkerchief. When the proprietress closed the store five or ten minutes later she discovered a pair of pink pajamas missing from a counter on which there had been three pairs. Later it was determined that a pair of blue jeans, a pair of ladies' shorts, and a women's nightgown were also missing from the store. The same afternoon Sergeant Sparks, an Army recruiter, was looking out the window of his office in Roseville and noticed defendant and two children, who appeared to be about 9 and 10 years of age. He first noticed the children because they were smoking. He saw the children removing articles from inside their clothing. He became suspicious when he saw this conduct repeated a short time later and phoned the police.

Roseville Police Officer McConnell intercepted defendant and the children soon thereafter. Defendant was carrying a large grocery bag. The officer asked defendant's permission to look into the bag and defendant consented. In the bag were the items described above which had been taken from Judy's Apparel. Some still had price tags and labels from Judy's Apparel and all were later identified by the proprietress.

When Officer McConnell first saw the clothing in the bag, he advised defendant of his *Miranda* rights. Then the officer asked defendant how he came into possession of the items. Defendant replied that he had bought them from a "white dude" and a "Mexican dude" around the corner for $10. The officer saw the labels from Judy's Apparel and asked if defendant had been there. Defendant denied that he had been. The officer asked if defendant had considered the items in the bag might be stolen because the price was so low and defendant replied that he had bought them because it was a good price.[1] The actual retail value of the items which had come from Judy's Apparel was $26.27.

At trial defendant himself was the only defense witness. He testified that he had gone into Judy's Apparel and purchased the handkerchief and later met two men, a Caucasian and a Mexican, who sold him the goods found in the bag. He claimed they asked $25 but finally accepted $15. He testified he did not see the Judy's Apparel labels on the items when he bought them and did not think they were stolen. He denied stealing the items or sending the children into the store to steal them.

---

[1] The bag also contained two other items, a watchband and a pair of sunglasses. These were not identified as being stolen property and were not valued.

### Refusal to Subpoena Witnesses

Defendant contends he was denied his statutory and constitutional rights to call witnesses to testify in his behalf. He correctly points out that the right to produce witnesses in his behalf is guaranteed to a defendant in a criminal case by the United States and California Constitutions as well as by the Penal Code. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 13; Pen. Code, § 686, subd. 3.) ▇▇▇ Defendant asserts that the two children, ages 9½ and 11½ respectively, were his only defense witnesses. He claims they were necessary to add to or corroborate his own testimony, in particular as to whether Officer McConnell requested to see the contents of the bag, whether a *Miranda* warning was given, and on the question whether he had constructive knowledge that the goods were stolen. Defense counsel did not want the children to testify because he believed they would not aid the defense.[2] Nonetheless defendant personally made several efforts at trial to get the court to subpoena the children. He assigns the refusal by the court to do so as reversible error. We do not agree.

First, the children were not the only witnesses who were available to defendant. He himself was a witness in his own behalf. Furthermore the children would have added nothing on the question whether defendant consented to Officer McConnell's looking into the bag, since defendant himself testified that he told McConnell, "If you don't know what I have in here [the bag], I'll let you open it." Second, as to the *Miranda* warning, defendant testified at first that he did not recall any *Miranda* warning being given him. Upon further questioning he stated he was given the warning in jail but not on the street. Admittedly there is ambiguity in his version which testimony from other percipient witness might clarify. However, even assuming the children's testimony on this point would be helpful to defendant, counsel was obviously of the view that the overall effect of their testimony would be damaging to defendant. Third, with respect to the element of knowledge that the goods were stolen, defendant's argument assumes that the jury found that he had only constructive knowledge. Clearly, the jury could have believed he had actual knowledge. Even if we assume his conviction was based on constructive knowledge arising from the suspi-

---

[2] The reason for defense counsel's tactical decision not to call the children is eloquently illustrated in the following presentation to the court out of the presence of the jury:

"MR. JOHANSON [Defense Counsel]: I'd like to add one comment for the record, Your Honor, that if the witnesses, these children referred to, were called and did in fact testify as this Defendant believes they would testify, it's my opinion that they would be perpetrating a fraud upon the Court, that they would be perjuring themselves and I wouldn't be a party to that."

cious circumstances of the purchase of the goods from the two men as testified to by defendant, it is sheer speculation that the children could testify to defendant's state of mind or belief as to how the goods were acquired by the two men from whom he claimed to have bought them.

The most significant thing, however, is that from the very beginning of the trial it was made clear to the court by defense counsel that the two children could not testify favorably to defendant. Counsel had discussed the matter with his client before trial. The prosecutor informed the court that the prosecution had attempted to subpoena the children as witnesses to testify against defendant as they had testified at prior juvenile court proceedings. They were not immediately available because they had moved to Texas and the prosecution had decided to proceed without them.

Defense counsel was convinced the children would testify against, not for, his client's position and the record bears this out. ■ Control of court proceedings or selection of trial tactics, including the decision whether to call certain witnesses is for counsel to decide. (*People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].) ■ The trial court did not err in failing to subpoena the children.

### The Adequacy of Time to Prepare for Trial

■ On the day set for trial an amended information was filed, defendant was arraigned thereon and trial commenced. Defendant contends he was deprived of due process of law by being denied sufficient time to prepare for trial on the amended information which, he urges, charged a different offense than charged in the original information. This contention has no merit. The original information was filed December 4, 1973. Defendant was arraigned with counsel present on December 5, 1973, and the case was set for trial on January 22, 1974. On the latter date the amended information was filed. The original information alleged "violation of California Penal Code section 496, CONCEALING STOLEN PROPERTY, a felony, in that on or about August 30, 1973, said defendant, at and in the County of Placer, State of California, did wilfully, unlawfully and feloniously conceal, sell and withhold certain property, to wit, wearing apparel, sunglasses and watchband, said property having been stolen, knowing at the time that said property had been stolen." The amended information alleged "violation of California Penal Code section 496, RECEIVING STOLEN PROPERTY, a felony, in that on or about August 30, 1973, said defendant, at and in the County of Placer, State of California, did wilfully, unlawfully and feloniously buy and receive and conceal, sell and withhold certain

property, to wit, wearing apparel, belonging to MARGUERITE JUDY, doing business under the name of JUDY'S APPAREL SHOP, said property having been stolen, knowing at the time that said property had been stolen."

Defendant argues that the amended information changed the charge in such a substantial way that he required but was not afforded more time to prepare his defense. This argument is specious. The charge in each pleading was violation of Penal Code section 496, which embraces the acts of receiving, buying, selling, concealing and withholding stolen property. Defendant was charged in *each* information in the language of the statute. The amended information was obviously for the primary purpose of removing the sunglasses and watchband from the list of stolen property involved.[3]

The law is clear that the principal purpose of an information is to notify the accused of the charge he is to meet at trial. (*People* v. *Lees* (1967) 257 Cal.App.2d 363, 369 [64 Cal.Rptr. 888].) An information which charges a violation of section 496 in substantially the language of the section itself is sufficient. (*People* v. *Warford* (1961) 191 Cal.App.2d 346, 350 [12 Cal.Rptr. 565]; *People* v. *Beesly* (1931) 119 Cal.App. 82, 85-86 [6 P.2d 114, 970].) The amended information adequately apprised defendant of the charge against him. On the record before us it is inconceivable that the defendant was in any way misled concerning the identity of the offense charged in the original information with that charged in the amended information.

Moreover on the date of trial when the amended information was filed, defendant's counsel acknowledged receipt of a copy, advised the court he understood it, and agreed that it was for the purpose only of correcting errors in the original. Neither defendant's counsel nor defendant personally objected to the filing of the amended information nor was a continuance requested. Failing that, defendant may not now complain on appeal. (See, e.g., *People* v. *Wrigley* (1968) 69 Cal.2d 149, 160 [70 Cal.Rptr. 116, 443 P.2d 580].)

### *Incompetency of Trial Counsel*

Defendant contends his trial counsel was incompetent in two respects each of which prejudiced his defense. The first instance of alleged incompetence is counsel's failure to request a continuance on the first day

---

[3]That this was the purpose is further demonstrated by a similar amendment to another count in the information, to wit, theft (of which defendant was acquitted and which is not involved in this appeal). The theft count in the first information contained reference to the watch and sunglasses, which reference was also stricken out in the amended information.

set for trial, when the amended information was filed. We have discussed this situation at some length hereinabove. We see no incompetence in failure to move for a continuance. Counsel was the same deputy public defender who had been appointed at the outset and who represented defendant from the time of the first arraignment. The record shows he was thoroughly familiar with the case and had no reason to seek a continuance. He was ready for trial and the amended information, of which he had received a copy, changed nothing of substance insofar as the charges were concerned. The failure to request a continuance did not operate to withhold or defeat presentation of any crucial defense. The trial was not reduced to a farce or sham. (See *People* v. *Najera* (1972) 8 Cal.3d 504, 516 [105 Cal.Rptr. 345, 503 P.2d 1353].)

◼ The second instance of incompetence alleged is counsel's refusal to subpoena the two children as defense witnesses. We have discussed this situation at some length hereinabove. The record is clear that counsel refused to call the children for the sound tactical reason that if the children were to testify truthfully the testimony would be unfavorable to his client. ◼ Inadequate representation must be shown not as a matter of speculation but as demonstrable reality. (*People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) Defendant has not met this burden.

### Constitutionality of Penal Code Section 496

Defendant urges constitutional infirmity of section 496 on three distinct grounds: (a) that it violates the principle of separation of powers; (b) that it is vague; (c) that it constitutes an improper delegation of legislative power. We shall consider these separately.

◼ Defendant claims that the statute improperly confers a judicial function upon the executive branch by permitting the district attorney to decide whether a violation thereof shall be prosecuted as a misdemeanor or a felony when the value of property involved does not exceed $200. Defendant compares section 496 with certain statutes which, because they require participation by the prosecutor in judicial acts, have to that extent been found unconstitutional. The decisions have uniformly struck down as violative of the constitutional doctrine of separation of powers, provisions in statutes which require consent of the prosecutor for a court to exercise judicial powers. (*People* v. *Tenorio* (1970) 3 Cal.3d 89, 94-95 [89 Cal.Rptr. 249, 473 P.2d 993] [consent for court to strike a prior narcotics conviction]; *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119, 122, 126-127 [95 Cal.Rptr. 524, 485 P.2d 1140] [consent for magistrate to pro-

ceed with misdemeanor prosecution of a felony alternatively punishable as a misdemeanor]; *People* v. *Navarro* (1972) 7 Cal.3d 248, 258-260 [102 Cal.Rptr. 137, 497 P.2d 481] [consent for court to consider civil commitment of a narcotic addict in certain cases]; *People* v. *Superior Court (On Tai Ho)* (1974) 11 Cal.3d 59, 65 [113 Cal.Rptr. 21, 520 P.2d 405] [consent for court to divert a defendant into an educational or treatment program]; *People* v. *Clay* (1971) 18 Cal.App.3d 964, 970-971 [96 Cal.Rptr. 213] [consent for the court to grant probation in certain cases].)

Defendant's attempted analogy between the instant case and those referred to in the preceding paragraph ignores the fundamental difference between the type of statute there involved and section 496. All the statutes involved in the cases above cited purported to impose a limitation on a purely judicial determination which in no event could be taken until after a charge had been filed in court and a prosecution had commenced in the judicial system. In the case before us the statute deals with the initial determination of the charge to be filed, a decision which, in its nature, occurs before an accusatory pleading is filed and thus before the jurisdiction of a court is invoked and a judicial proceeding initiated. It involves a purely prosecutorial function and does not condition judicial power in any way. The function thereby conferred relates only to what is clearly the province historically of the public prosecutor, i.e., the discretion whether or not to prosecute. (See *People* v. *Vatelli* (1971) 15 Cal.App.3d 54, 58 [92 Cal.Rptr. 763]; *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813]; *Taliaferro* v. *City of San Pablo* (1960) 187 Cal.App.2d 153, 154 [9 Cal.Rptr. 445].) The action of a district attorney in filing an information is not in any way an exercise of a judicial power or function. (*People* v. *Bird* (1931) 212 Cal. 632, 641 [300 P. 23].)

 Defendant next challenges section 496 for vagueness. He relies on the indisputable proposition that due process of law requires that a criminal statute must be so framed that those to whom it is to be applied and those who apply it may know what standard of conduct is required. (See, e.g., *Agnew* v. *City of Culver City* (1956) 147 Cal.App.2d 144, 154 [304 P.2d 788].) Defendant argues that this principle is violated by section 496 because the statute vests the prosecutor with "unlimited discretion" in deciding whom to charge with felony when the property involved is worth less than $200. There can be no question but that discretion permeates the entire process of bringing charges against a person suspected of having committed a crime. And it is the district attorney who is vested with discretionary power to determine whether to prosecute. (Gov. Code, § 26501.) There is no review by way of the appellate process of

such a decision nor can a court control this statutory power by mandamus.[4] (*People* v. *Vatelli, supra,* 15 Cal.App.3d 54, 58; *Taliaferro* v. *City of San Pablo, supra,* 187 Cal.App.2d at p. 154; *Taliaferro* v. *Locke, supra,* 182 Cal.App.2d at p. 757.) Accordingly, it is not section 496 that vests the prosecutor with "unlimited discretion." The prosecutor under general law already has that discretion in deciding whether to charge defendant at all. The statute simply provides that the prosecutor, having decided to file a charge, can decide to file a misdemeanor charge rather than a felony charge. A prosecutor is not subject to judicial supervision in determining what charges to bring and how to draft accusatory pleadings. (*Stenback* v. *Municipal Court* (1969) 272 Cal.App.2d 27, 30 [76 Cal.Rptr. 917].) For the foregoing reasons, the alleged vagueness of section 496 does not tender a justiciably cognizable issue in the context in which it is raised by defendant herein.

 Defendant contends that section 496 contains an unlawful delegation to the district attorney of legislative power to define the punishment for a violation thereof when the value of the property involved is less than $200. It has been held that the power to prescribe punishments for defined offenses is a legislative power which may not be delegated to an administrative agency or official. (*Moore* v. *Municipal Court* (1959) 170 Cal. App.2d 548, 555-556 [339 P.2d 196]; *Harbor Comm'rs.* v. *Redwood Co.* (1891) 88 Cal. 491, 495 [26 P. 375].) However, section 496 does not violate this principle. The Legislature, within section 496 itself prescribed the penalty for both felony and misdemeanor violations. Thus there is no delegation of legislative power to prescribe a penalty or punishment.

*Cruel or Unusual Punishment*

 Finally, defendant contends that sentence to the state prison for the term prescribed by law, i.e., not more than 10 years to run consecutively with a prior incompleted term, constitutes cruel or unusual punishment and is, therefore, unconstitutional within the meaning of the California constitutional provision proscribing such punishments. (Cal. Const., art. I, § 6.) He relies principally on the case of *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], which set forth (at p. 424) the general rule that a punishment which carries a

---

[4]However, when a statute provides that the district attorney *shall* bring an action to abate a nuisance when so directed by the board of supervisors mandamus is available to compel the district attorney to act. (*Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671, 675-676 [227 P.2d 14].)

possible maximum prison term that is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity is a cruel or unusual punishment. That case prescribed certain criteria by which to evaluate punishment. These are reiterated and refined in the more recent case of *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073]. The first criterion requires an assessment of the offense and the offender with regard to the degree of danger thereby presented to society, combined with consideration of the penological purposes of the prescribed punishment. (*In re Foss, supra*, 10 Cal.3d at pp. 919-920.) The second criterion requires a comparison of the questioned punishment with punishments imposed in the same jurisdiction (California) for offenses which might be deemed more serious. (*Id.* at p. 920.) The third criterion requires comparison of the challenged penalty with punishments prescribed in other jurisdictions (other states) for the same conduct. (*Ibid.*)

Given the presumption of constitutionality, it is incumbent upon defendant to demonstrate that the challenged punishment violates the above stated criteria. Defendant argues that his crime was not very serious; the value of the property was minimal; there was no evidence he was acting as a "fence" for stolen goods; there was no violence surrounding the crime; there were no prior convictions charged and in five other states receiving stolen goods of a value less than $200 is not a felony.

Defendant further complains that the punishment imposed by the court "for the paltry crime of receiving $26.27 worth of stolen property" was inordinate. It has been said that those who offend by violating section 496 are more dangerous and detrimental to society than those who offend by committing theft. (*People* v. *Smith* (1974) 42 Cal.App.3d 706 [117 Cal.Rptr. 88]. The former "lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot." (*People* v. *Tatum* (1962) 209 Cal.App.2d 179, 183 [25 Cal.Rptr. 832].) For that reason they are subjected to the heavier maximum penalty (*id.* at p. 184).

Because of their tender years, the children involved by the defendant in this episode undoubtedly were not committed thieves who needed a "market" or even a "depository" for their loot. But the fact that defendant was not dealing with chronic thieves in no way mitigates the seriousness of this offense. To those deserving the more severe punishment for providing a "market or depository" for thieves should be added those who corrupt children by encouraging and inducing them, for their own venal purposes, to commit thievery.

The showing made by defendant fails to demonstrate that the sentence imposed is within the perimeters of illegality enunciated by the *Lynch* and *Foss* cases. Defendant has not shown that any cruel or unusual punishment has been inflicted upon him; that the statute involved is unconstitutional; or for the reasons set forth in the preceding paragraph that the sentence of the trial court constituted an abuse of discretion.

The judgment is affirmed.

Richardson, P. J., and Janes, J., concurred.

Petitions for a rehearing were denied December 9 and 10, 1974, and appellant's petition for a hearing by the Supreme Court was denied January 23, 1975. Richardson, J., did not participate therein.