Filed 12/12/14  In re A.Z. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.Z., a Person Coming Under the Juvenile Court Law. | H040414<br>(Santa Clara County<br>Superior. Ct. No. JV37926D) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>A.Z.,<br><br>        Defendant and Appellant. | |

A.Z., a minor, appeals from a restitution order.  He contends that the juvenile court abused its discretion in ordering restitution in the amount of $3,755, because there was insufficient evidence tying him to the burglary that was the basis for the restitution order. We affirm the order.

*Facts and Proceedings Below*

On January 4, 2011, the Santa Clara County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, subdivision (a)[1] (Petition A) in which the district attorney alleged that A.Z. committed first degree burglary of an inhabited residence (Pen. Code, §§ 459, 460, subd. (a), 667.5, subd. (c)(21)).  On

---

[1]     All further statutory references are to the Welfare and Institutions Code.

March 22, 2011, A.Z. admitted the charge. The juvenile court found A.Z. eligible and suitable for deferred entry of judgment (DEJ).

Subsequently, A.Z. failed DEJ due to his "non-compliance." The juvenile court sustained Petition A and placed A.Z. in the community release program (CRP). At the disposition hearing held on November 28, 2011, the juvenile court declared A.Z. a ward of the court, placed him on the electronic monitoring program (EMP) for 60 days, and placed him on probation in his parents' home.

On January 20, 2012, the probation officer filed a petition pursuant to section 777 (Petition B) in which he alleged that A.Z. had violated his probation by failing to abide by the terms of the EMP contract, by failing to abide by his parents' directives, and by violating an alcohol and drug prohibition condition. A.Z. was arrested and placed in juvenile hall. Thereafter, he admitted violating his probation. On March 15, 2012, A.Z. was continued as a ward of the court; the juvenile court placed A.Z. in the juvenile treatment program (JTP).

On November 13, 2012, the probation officer filed a petition pursuant to section 777 (Petition C). This time, the probation officer alleged that A.Z. violated his probation by failing to appear for a JTP court review, by failing to report for scheduled office appointments, by failing to attend school regularly, by failing to begin public service work as required, by testing positive for marijuana on two occasions, and by failing to attend substance abuse treatment on four occasions. On November 14, 2012, A.Z. admitted violating his probation. Subsequently, the court ordered a county individualized treatment for adolescents (CITA) evaluation and continued the disposition hearing.

On December 13, 2012, the Santa Clara County District Attorney filed a petition pursuant to section 602, subdivision (a) (Petition D) in which the district attorney charged A.Z. with receiving stolen property (Pen. Code, § 496, subd. (a)). The same day, the juvenile court found that A.Z. had failed the JTP.

On December 18, 2012, A.Z. admitted the allegation in Petition D. On January 14, 2013, the juvenile court continued A.Z. as a ward of the court, declared that all orders not in conflict remain in force and effect, and again placed A.Z. on probation in his parents' home.[2] As one of the conditions of his probation the juvenile court ordered that A.Z. "pay Mrs. C. Lee $4,255.00 restitution for losses sustained . . . ." At a contested restitution hearing related to Petition D held on November 15, 2013, the juvenile court amended the amount of victim restitution and ordered that A.Z. pay Mrs. C. Lee $3,755.

To give context to A.Z.'s argument on appeal, we recite the following facts from the probation officer's report that was filed on January 14, 2013, for the disposition hearing on Petition D.

"According to Palo Alto Police report #12-3993, on August 9, 2012, a residential burglary occurred at Manuela Avenue in Palo Alto, California. Reports indicate the victim's family returned home from vacation and found a ransacked house with drawers that have been rummaged through. The suspects took video game consoles, jewelry, and several air-soft guns. Officers located several footprints from the point of entry through the house. In addition, a piece of chewed gum was located attached to a lock box in one of the bedrooms. The victim, Mr. Lee[,] spoke to Officers about a Facebook message he had received. Mr. Lee stated he had received information from an associate that Robert Ozols and Jack Stinson, both past students of Gunn High School[,] were bragging about stealing property from Mr. Lee's residence. It should be noted that on September 7, 2012, suspects [A.Z.], Jack Stinson, Joseph Alexander, and Skyler Larson were all contacted by Palo Alto Police after park hours (report # 12-4609). At this time, Officers seized marijuana, alcoholic beverages, and two air soft guns from the suspects. [A.Z.] admitted to taking his father's automobile without his permission. [A.Z.] also claimed ownership of both air soft guns, the marijuana, and the open container of alcohol found

---

[2] Later, A.Z. again violated his probation.

3

inside his father's vehicle.  The air soft guns were booked into police evidence at this time by Officer Schmidt #6385.  [¶]  Palo Alto Police Officer Fino #6381, believed the two air soft guns may have belonged to the same victim in the residential burglary that occurred on Manuela Avenue.  Mr. Lee[] was contacted by Officers and asked to view the two air soft guns in police evidence in order to positively identify them as being his.  On November 28, 2012, a search warrant was conducted at suspect Robert Ozols' and Alec Bite's residence at 3821 Ross Road in Palo Alto.  Officers located stolen property from the residential burglary and arrested suspect Ozols for possession of stolen property and Alec Bite for illegal possession of prescription medication.  Robert Ozols later confessed to participating in the residential burglary along with Jack Stinson, [A.Z.], and Peter Legenhausen.  Jack Stinson would also later confess and would return property stolen from the residential burglary to investigating Officers.  [¶]  It should be noted, on November 13, 2012, [A.Z.] self-surrendered on an outstanding Bench Warrant to Juvenile Hall.  [A.Z.] was interviewed in Juvenile Hall regarding his involvement in the above residential burglary . . . and denied any involvement."

At the contested restitution hearing, defense counsel maintained that the court did not have the power to expand the restitution amount beyond the items that A.Z. possessed, which had formed the basis for his admission that he had received stolen property.  Counsel asserted that A.Z. had never been interviewed and never made any statements or admissions regarding the burglary of the Lees' residence.  Counsel argued that to expand restitution to all the property stolen would serve no rehabilitative purpose.  With respect to the amount of restitution, counsel argued that the two guns A.Z. possessed were returned to the victim in the same condition as when they were taken and therefore "the restitution number should be zero."

The court ordered that A.Z. pay restitution for the Airsoft guns taken in the burglary.  Specifically, the court stated that it would "affirm that the restitution in this matter for the remainder of the Airsoft guns that the victims are claiming is reasonably

4

related and connected to the possession of the stolen weapons, and will order restitution accordingly. I believe it accomplishes several things that are consistent with the goals of restitution, that is: The rehabilitation of the Minor; the compensation of . . . the victims for their losses; it makes amends, in a general sense, to society for the breach of the law; holds the minor accountable and does deter future criminality. [¶] So for all those reasons, I believe restitution in this matter is appropriate."

As to the amount of restitution the court stated that it "had previously made a prima facie finding based on the information that was provided by the victims to probation in the amount of $4,255. Since that time, there's been a recovery of two of the handguns, which are assessed at a value of $500 but that would reduce the Court's previous prima facie finding by that amount, so the court will order restitution in this case to [Mrs. Lee] in the amount of $3,755."

A.Z. filed a timely notice of appeal from the restitution order.

*Discussion*

A.Z. argues that there was insufficient evidence tying him to the burglary of the Lees' residence. He asserts that the only evidence linking him to the burglary were the "self-serving hearsay statements—contained in a police report as retold in a probation report—of the adult defendants who named [him] as a participant in the burglary at the time they admitted their own involvement with the burglary. Absent sufficient evidence linking [him] to the burglary, the [juvenile] court lacked the 'discretion to order . . . probationer to pay restitution for losses due to criminal conduct [that] was neither charged and found to be true nor admitted.' " A.Z. contends that this court must strike the restitution order. As we shall explain, we are not persuaded in a case such as this, where restitution was a condition of A.Z.'s probation.

Section 730.6, subdivision (a)(1) provides in pertinent part, "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described

5

in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor."

If section 730.6 were the exclusive authority for the restitution order at issue here, we would conclude the order was invalid. This is because subdivision (a)(1) of section 730.6 requires restitution for "economic loss as a result of the minor's conduct . . . ." "However, the reference to 'the minor's conduct' refers to the precedent phrase defining the conduct: 'conduct *for which a minor is found to be a person described in section 602 . . . .*' ([citation], italics added.) Thus, subdivision (a)(1) of section 730.6 mandates that a minor must pay restitution where conduct for which the minor is declared a ward of the court under section 602 results in economic loss to the victim." (*In re T.C.* (2009) 173 Cal.App.4th 837, 844.) Here, A.Z. was not "found to be a person described in section 602" with respect to the burglary of the Lees' residence.

Nevertheless, section 730[3] "grants courts broad discretion in establishing conditions of probation in juvenile cases. [Citation.] '[T]he power of the juvenile court is even broader than that of a criminal court.' [Citation.] The juvenile court's exercise of discretion in establishing conditions of probation in juvenile cases 'will not be disturbed in the absence of manifest abuse.' [Citation.]" (*In re Christopher M.* (2005) 127 Cal.App.4th 684, 692, overruled on other grounds in *People v. Gonzales* (2013) 56 Cal.4th 353, 375.)[4] Section 730.6, did not "displace[] the well-recognized authority of a

_____

[3]    Section 730, subdivision (b) provides in relevant part: "When a ward described in subdivision (a) is placed under the supervision of the probation officer . . . , the court may make any and all reasonable orders for the conduct of the ward . . . . The court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced."

[4]    "The juvenile court's broad discretion to fashion appropriate conditions of probation is distinguishable from that exercised by an adult court when sentencing an adult offender to probation. Although the goal of both types of probation is the rehabilitation of the offender, '[j]uvenile probation is not, as with an adult, an act of (continued)

6

juvenile court to impose 'any and all reasonable conditions [of probation] that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced' pursuant to section 730, subdivision (b)." (*In re T.C.*, *supra*, 173 Cal.App.4th at pp. 844-845.) "Restitution has long been considered a valid condition of probation." (*Id*. at p. 847; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*).)

" 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . ." ' [Citation.]" (*People v. Anderson* (2010) 50 Cal.4th 19, 32.) "[R]estitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

Here, the condition requiring A.Z. to pay restitution for the losses sustained by the victim was related to A.Z's crime of receiving stolen property. The police found A.Z. in possession of some of the property stolen from the victims less than one month after the burglary. "Catching a defendant with the goods in possession shortly after a theft rationally suggests a connection to and knowledge of the crime . . . ." (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421.) More importantly, Penal Code section 496, subdivision (a), which criminalizes the receipt of stolen property, "is directed at those who knowingly deal with thieves and with their stolen goods after the theft has been committed . . . in order to provide the thieves with a . . . depository for their loot."

---

leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation.' [Citation.]" (*In re Tyrell J*. (1994) 8 Cal.4th 68, 81, overruled on other grounds in *In re Jaime P*. (2006) 40 Cal.4th 128, 130.)

7

(*People v. Tatum* (1962) 209 Cal.App.2d 179, 183, abrogated by statute on another ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1165.)  Thus, contrary to A.Z.'s position, one who receives stolen property assists the thief or thieves.  A.Z.'s association with one admitted burglar and his possession of some of the items taken during the commission of the burglary establish that the restitution order related to A.Z.'s offense of receiving stolen property, which he admitted.[5]  Accordingly, the juvenile court could properly conclude that A.Z.'s criminal conduct was related to the theft of all the property taken during the burglary and the imposition of a restitution fine for the loss of all the guns taken in the burglary would further A.Z.'s rehabilitation and deter his future criminality.

In addition, at the time A.Z. knowingly possessed stolen property, he was already on probation from a burglary he committed in late 2010 and had admitted violating several terms of his probation.  Requiring A.Z. to pay restitution for all the AirSoft guns that were missing from the Lees' residence was reasonable to foster his rehabilitation and deter such conduct in the future.  The reasonableness and propriety of imposed probation conditions must be measured not only by the circumstances of the current offense, but by A.Z.'s entire social history.  (*In re Walter P.* (2009) 170 Cal.App.4th 95, 100 [in fashioning the conditions of probation, the juvenile court should consider the minor's entire social history in addition to the circumstances of the crime].)

A.Z. asserts that "the procedure of the restitution hearing deprived [him] of his Fourteenth Amendment right to due process."  While a minor's due process rights at a restitution hearing are quite limited, the minor must be provided with sufficient

---

[5]    There is some indication in the record that A.Z. was well acquainted with more than one of the admitted burglars.  In the prosecutor's response to A.Z.'s motion regarding restitution, the prosecutor noted the following.  "On September 7, 2013, the minor [A.Z.], Robert O., Jack S., and two others were spotted by PAPD at a Palo Alto park.  The officer discovered alcohol, marijuana, and two airsoft guns inside the vehicle the minor was driving."

information—whether through detailed information in the probation report, receipts, testimony, or other means—to provide an adequate factual basis for the claims and to permit him to meaningfully challenge the amounts requested. (See *People v. Cain* (2000) 82 Cal.App.4th 81, 86.) That happened in this case. The probation officer's report recommended restitution for all the AirSoft guns and accessories that were taken from the Lees' residence and had not been recovered. The probation officer received documentation from the Lees about the value of those guns and accessories. A.Z. did not contest the value of the lost items. Instead, he maintained that he was not responsible for anything other than the two guns he possessed, which formed the basis for the receiving stolen property charge. A.Z. was afforded an opportunity to brief the restitution issue and to contest the amount of restitution claimed. The restitution hearing, as reflected by the record, was not fundamentally unfair.[6]

Finally, A.Z. contends that we must remand this case to the juvenile court because the court erred when it failed to declare whether his offense of receiving stolen property (Pen. Code, § 496) was a felony or a misdemeanor.

---

[6] We recognize that in *In re Maxwell C.* (1984) 159 Cal.App.3d 263, 266 (*Maxwell C.*), the court, relying on *People v. Richards* (1976) 17 Cal.3d 614, noted that due process considerations might prohibit restitution without the requisite connection between the offense committed and the losses for which restitution is ordered. In *Maxwell C.*, the court held that the minor, whose offense was receiving stolen property (a car stereo), could not be required to pay restitution to the owner of an automobile for damage to the vehicle caused by the stealing of the stereo without evidence that the minor was involved in the stealing. (*Maxwell C.*, *supra*, at pp. 265-267.) In *People v. Richards*, *supra*, at page 622, the court had held that for restitution to be imposed it must be directly related to the crime charged and must relate to acts by the accused which were committed with the same state of mind as the offense of which the accused had been convicted. However, in *People v. Carbajal*, *supra*, 10 Cal.4th 1114, the Supreme Court stated: "[I]nsofar as *Richards* may be read to require that trial courts refrain from conditioning probation on restitution 'unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as the offense which he was convicted . . .' [citation], we disapprove it." Thus, *Maxwell C.* relies heavily on *Richards* for the precise point on which it has since been overruled.

9

The offense alleged in Petition D and found true in this case, receiving stolen property (Pen. Code, § 496, subd. (a)), is a "wobbler," punishable either as a felony or a misdemeanor.[7]

Section 702 provides that in a juvenile proceeding if a "minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." Section 702's express declaration requirement serves to ensure that the juvenile court knows whether a particular crime is a wobbler and is aware of its discretion to treat the offense as a misdemeanor rather than as a felony. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1207 (*Manzy W.*)

In *Manzy W.*, *supra*, 14 Cal.4th 1199, the California Supreme Court held that a remand was required where the juvenile court had failed to make an express declaration as to whether the offense was a felony or a misdemeanor. In *Manzy W.*, the offense had been alleged as a felony, and Manzy had admitted the allegation. (*Id.* at p. 1202.) The juvenile court had committed Manzy to the California Youth Authority and set his maximum term of physical confinement at three years, a felony-level term. (*Id.* at p. 1203.) Nevertheless, the California Supreme Court held that section 702's requirement of an express declaration required a remand. The court noted that a reference to the offense as a felony in the minutes of the disposition hearing would not obviate the need

_____

[7]    Penal Code section 496, subdivision (a) provides "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170." In turn, Penal Code section 1170, subdivision (h)(1) provides "Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years."

10

for an express declaration by the court. (*Manzy W.*, *supra*, at pp. 1207-1208.) Furthermore, "neither the pleading[s], the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony." (*Id.* at p. 1208.) "The key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Id.* at p. 1209.)

In *Manzy W.*, the California Supreme Court pointed out that a remand was not " 'automatic' " whenever the juvenile court failed to make an express declaration. (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) "[T]he record in a given case may show that the juvenile court, despite its failure to comply with the statute, was aware of, and exercised its discretion to determine the felony or misdemeanor nature of a wobbler. In such case, when remand would be merely redundant, failure to comply with the statute would amount to harmless error." (*Ibid.*)

In this case, in taking A.Z.'s plea, the court informed him, "So you're charged in this D petition with a violation of Penal Code Section 496(a), it's a felony, described as buying, receiving, concealing or withholding stolen property." After A.Z. admitted the allegation, the juvenile court stated, "The disposition [*sic*] is found to be true and *it is sustained at this time as a felony*." (Italics added.) In addition, in the written findings and orders of the disposition hearing, which Judge Valencia signed, a check mark appears in the box next to the following: "The court previously sustained the following counts. Any charges which may be considered a misdemeanor or a felony for which the court has not previously specified the level of the offense are now determined to be as follows." Thereafter, written in by hand is the following: "cnt. 1 PC 496(a) Felony."

Given the foregoing, the record as a whole establishes that the juvenile court understood it had discretion to determine whether the receiving stolen property count was

11

a felony or a misdemeanor and determined that it was a felony.  Accordingly, "remand would be merely redundant . . . ."  (*Manzy W*., *supra*, 14 Cal.4th at p. 1209.)

## *Disposition*

The juvenile court's victim restitution order is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.



_____

MÁRQUEZ, J.