[Crim. No. 17111. Fourth Dist., Div. Three. May 31, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
LONNIE E. YOUNGHANZ, Defendant and Appellant.

COUNSEL

Wallin, Roseman & Talmo and Ronald R. Talmo for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steven H. Zeigen and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WALLIN, J.—Defendant Lonnie Younghanz appeals his conviction of four counts of child molestation. He challenges the constitutionality of the mandatory disclosure requirement of the Child Abuse Reporting Act and argues the method of sign language used resulted in a denial of his right to confront a witness and to have an adequate record on appeal.

On October 27, 1981, Younghanz met with a student counselor at the Chapman College Community Clinic and disclosed he had been having intercourse with his deaf-mute, borderline mentally retarded daughter for approximately eight years. The next day, Dr. Petersen, the clinic director, informed Younghanz that Penal Code section 11166[1] required him to report all instances of child abuse to a child protective agency. Despite this warning, Younghanz proceeded to discuss the details of his problem with Dr. Petersen. Because the clinic had no expert available to deal with Younghanz's problem, Dr. Petersen referred him to a specialist. The following day, Dr. Petersen filed a report with the child abuse registry.

The resulting investigation revealed Younghanz had been having sex with his daughter from the time she was approximately 8 years old until she was 16 years old. In 1979, he had a nervous breakdown. The record is conflicting as to whether Younghanz's sexual relations with his daughter caused the breakdown. Younghanz testified he had not had intercourse with his

---

[1]All references are to the Penal Code unless otherwise indicated.

daughter before the breakdown, but an investigator testified Younghanz told him the sexual problems caused the breakdown. Younghanz admitted having intercourse with his daughter after his nervous breakdown. He attended therapy sessions and refrained from having intercourse with his daughter for a period of eight or nine months. After the family moved to Orange County in 1981, however, Younghanz began having intercourse with her again. At that time, Younghanz sought therapy from the Chapman Clinic.

Younghanz was convicted of two counts of incest (§ 285), one count of sodomy (§ 286, subd. (b)(1)) and one count of oral copulation (§ 288a, subd. (b)(1)). He was sentenced to a total of four years' imprisonment.

I

Younghanz first contends the mandatory disclosure requirement of the Child Abuse Reporting Act (§ 11166) violates his rights to due process and equal protection under the United States and California Constitutions by interfering with his fundamental right to seek a cure for his illness. He contends the right to seek a cure for his illness is a fundamental right because it is "basic in terms of personal autonomy" and has "special significance and fundamental importance." Therefore, he argues the statute should be subjected to strict scrutiny and the state should be required to establish a "compelling state interest" to justify the reporting requirement. He concludes the statute is unconstitutional because it is not "narrowly tailored" to fit the objective of protecting the welfare and safety of children.

The Child Abuse Reporting Act (§ 11165 et seq.) requires the reporting of all known and suspected instances of child abuse. (*People* v. *Stritzinger* (1983) 34 Cal.3d 505, 512 [194 Cal.Rptr. 431, 668 P.2d 738].) Section 11166, subdivision (a) provides "any child care custodian, medical practitioner, nonmedical practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident." Section 11165, subdivision (g) specifically includes "the sexual assault of a child . . ." in its definition of "child abuse" and subdivision (i) includes licensed psychiatrists and psychologists in its definition of a medical practitioner.

Younghanz cites no authority, and we have found none, for considering the right to seek a cure for one's illness as a fundamental right. He relies on cases holding unconstitutional ordinances restricting the right to seek certain kinds of medical treatment. However, those cases concern an infringement upon recognized fundamental privacy rights relating to personal family matters and family planning. (See *City of Akron* v. *Akron Center for Reproductive Health, Inc.* (1983) 462 U.S. 416 [76 L.Ed.2d 687, 103 S.Ct. 2481] (holding ordinance restricting availability of abortion unconstitutional); *Planned Parenthood Federation of America* v. *Schweiker* (1983) 559 F.Supp. 658 (holding ordinance requiring clinics to notify parents of their teenage daughter's receipt of contraceptives unconstitutional).)

The right to seek a particular form of medical treatment as a cure for one's illness, however, has not been recognized as a fundamental right in California. In fact, the right to make decisions regarding medical treatment has been held *not* to be a fundamental right within the concept of a right to privacy. In *People* v. *Privitera* (1979) 23 Cal.3d 697 [591 P.2d 919, 5 A.L.R.4th 178], the defendants were convicted of selling and conspiring to sell laetrile for the alleviation or cure of cancer in violation of a statute prohibiting the sale of drugs which have not been approved by a federal agency or the state board. The defendants challenged the constitutionality of the statute arguing it infringed upon their " 'interest in independence in making certain kinds of important decisions.' " (*Id.*, at p. 702.) The California Supreme Court rejected the argument stating "the kinds of 'important decisions' recognized by the high court to date as falling within the right of privacy involve 'matters relating to marriage, procreation, contraception, family relationships, and child rearing and education' [citations omitted], *but do not include medical treatment.*" (*Ibid.*, italics added.)

Because we hold the right to seek a cure to one's illness is *not* a fundamental right, the appropriate standard of review is the rational basis test rather than the compelling state interest test. Therefore, the ordinance must be upheld if it bears a reasonable relationship to legitimate state goals. (See *People* v. *Privitera, supra,* 23 Cal.3d 697.)

The state's interest in protecting the general welfare and safety of children from the devastating impact of child abuse is more than sufficient to justify the reporting requirement of section 11166. In fact, the state's interest in protecting children from abuse may reach the level of a compelling interest. In either case, the interest outweighs Younghanz's interest in seeking a cure for his illness because "[t]he right of privacy is not absolute, and in some cases is subordinate to the state's fundamental right to enact laws which promote public health, welfare and safety, even though such laws may in-

vade the offender's right of privacy. [citation omitted]." (*Kathleen K.* v. *Robert B.* (1984) 150 Cal.App.3d 992, 996 [198 Cal.Rptr. 273].)

In *Kathleen K.*, the court allowed the plaintiff to maintain an action for damages against the defendant for allegedly transmitting genital herpes to her through sexual intercourse. In holding the cause of action did not invade defendant's right to privacy, the court listed examples of permissible intrusions upon the right to privacy including the state's right to enact penal statutes covering forcible and consensual sexual acts, to require registration of sex offenders, and to prohibit spousal rape. (*Ibid.*)

The disclosure requirement of the Child Abuse Reporting Act falls within the category of permissible intrusions upon the right to privacy. As stated in *Kathleen K.*, "the right of privacy 'does not insulate a person from all judicial inquiry into his or her sexual relations' . . . ." (*Ibid.*) Therefore, we hold the state's interest in the protection of children justifies the intrusion imposed by section 11166.[2]

## II

■ Younghanz contends the disclosure requirement of section 11166 is unconstitutional because it compels him to incriminate himself in violation of the Fifth Amendment of the United States Constitution and Article I section 15 of the California Constitution. He argues the statute transforms the psychologist into a state agent so that any incriminating statements made to the psychologist violate his privilege against self-incrimination.

The argument is flawed because the Child Abuse Reporting Act does not transform the reporter into a police agent. (*People* v. *Salinas* (1982) 131 Cal.App.3d 925, 941 [182 Cal.Rptr. 683].) In *Salinas*, a police officer responded to an anonymous call reporting a suspected instance of child abuse. When the officer arrived at the residence, he found an unconscious child and immediately called for an ambulance. At the hospital, a doctor questioned the child's mother to obtain a medical history of the child for purposes of diagnosis and treatment. During her trial on charges of felony child abuse, the mother attempted to exclude her statements made to the doctor because they were statements made to a police agent absent *Miranda* warnings. ■ The court upheld the trial court's ruling that the doctor was not a police agent and, therefore, *Miranda* did not apply because (1) the purpose of the reporting statute is to bring cases of suspected child abuse to the

---

[2]We need not address Younghanz's equal protection claim because he has failed to allege the state has adopted a classification affecting two or more similarly situated groups in an unequal manner. Thus, he has not stated a meritorious claim under the equal protection clause. (*In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549].)

attention of police authorities as early as possible to avoid the potential danger to the child when he or she remains with the abusing parent; (2) in an emergency situation, the interest in securing the child's well-being outweighs the alleged abuser's right against self-incrimination; (3) the statute imposes a duty to report on a very large group of people and it would be unmanageable and overbroad to require all specified reporters to give *Miranda* warnings; and (4) the overriding purpose of obtaining a medical history is to treat the patient, not to enforce the law. (*Id.,* at pp. 941-943.)

■ Similar reasons compel us to hold section 11166 did not transform Dr. Petersen into a state agent. Specifically, the statute only requires the psychologist to make an initial report to authorities indicating suspected child abuse or molestation. (*People* v. *Stritzinger, supra,* 34 Cal.3d 505.) It does not impose investigative duties upon the "agents." In order to preserve the possibility of meaningful therapy for the patient, a psychologist need not reveal "details given to him by the adult patient in subsequent sessions . . . ." (*Id.,* at p. 514.) Therefore, the statute does not inhibit the psychologist in treating the patient and the overriding purpose of obtaining information from the patient is to provide treatment rather than to enforce the law.

■ In order to protect a patient's expectation of privacy regarding the seemingly therapeutic and confidential therapy session, however, the therapist should warn the patient of his or her statutory duty to testify against the patient concerning instances of child abuse. (*People* v. *Stritzinger, supra,* 34 Cal.3d at p. 524 (conc. opn. of Kaus, J.).) If the patient then chooses to continue with the therapy session, he or she waives any right to later challenge the admissibility of the incriminating evidence in court. (*Ibid.*)

Here, Younghanz disclosed the nature of his problem to a student counselor who immediately related the information to the clinic director, Dr. Petersen. Before Dr. Petersen discussed the problem with Younghanz, he advised Younghanz that he was required to report the incident and gave Younghanz a copy of section 11166 to read. Nevertheless, Younghanz chose to continue the session and disclosed details of his sexual activities with his daughter to Dr. Petersen. Thus, assuming Younghanz did have a right not to incriminate himself under these circumstances, he "voluntarily, knowingly and intelligently" waived that right and cannot now challenge the admissibility of Dr. Petersen's testimony. (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *People* v. *Stritzinger, supra,* 34 Cal.3d at p. 521 (conc. opn. of Kaus, J.).)

### III

■ Younghanz also contends he was denied his right to confront an opposing witness (the victim) because of the inherent unreliability of the

sign language method used at trial. He also argues the failure to videotape the victim's sign language testimony deprived him of a complete record for adequate consideration on appeal. Younghanz correctly claims a right to a literal translation of a witness's testimony (Evid. Code, § 751, subd. (a)) and a complete record on appeal (*People* v. *Chessman* (1959) 52 Cal.2d 467, 486 [341 P.2d 679].) He is not entitled to relief, however, because he has failed to allege any errors in translation despite his apparent fluency in sign language and his testimony regarding his ability to understand his daughter. Because he claims no prejudice, neither his constitutional right to confront the witness nor his right to a complete record on appeal was impaired. (*People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].)

The judgment is affirmed.

Trotter, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied June 20, 1984, and appellant's petition for a hearing by the Supreme Court was denied August 29, 1984. Mosk, J., and Grodin, J., were of the opinion that the petition should be granted.