[No. D009025. Fourth Dist., Div. One. June 11, 1990.]

JOHN FERRARO et al., Plaintiffs and Appellants, v.
DAVID L. CHADWICK et al., Defendants and Respondents.

COUNSEL

Thompson & Lee, David R. Thompson and Deborah Peterson-Lee for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Horvitz & Levy, Barry R. Levy and Douglas G. Benedon for Defendants and Respondents.

OPINION

**TODD, J.**—John and Michelle Ferraro and their daughter April appeal from a judgment of dismissal of their complaint for negligent infliction of emotional distress, intentional infliction of emotional distress and malicious prosecution entered after the trial court sustained the demurrer of David Chadwick, M.D., and Children's Hospital to the complaint without leave to amend.

FACTS

The facts are taken from the Ferraros' complaint because a "demurrer is to be treated as admitting the truthfulness of all properly pleaded factual allegations of the complaint, but not contentions, deductions or conclusions of fact or law. . . ." (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 827-828 [134 Cal.Rptr. 839].)

On October 9, 1983, Douglas Allen Yates, Jr., fell down the stairs and was taken to Bay General Hospital in Chula Vista and later transferred to Children's Hospital. Douglas, the natural son of Michelle Ferraro and the stepson of John Ferraro, died on October 10, 1983. He was approximately one month shy of his third birthday.

The Ferraros' complaint, filed September 22, 1986, consisted of four causes of action: (1) negligent infliction of emotional distress and loss of parental consortium on behalf of April Ferraro; (2) negligent infliction of emotional distress and loss of consortium on behalf of John and Michelle Ferraro; (3) intentional infliction of emotional distress on behalf of all plaintiffs, and (4) malicious prosecution on behalf of John and Michelle Ferraro. The complaint alleged that Chadwick, "in an atmosphere created by him, and encouraged by the management policies" of Children's Hospital repeatedly stated it was probable (1) Douglas was left untreated for a substantial period of time; (2) the Ferraros had fabricated his preadmission medical history; (3) one or both of the Ferraros had battered, shook or hit Douglas while in an "uncontrolled rage," and (4) one or both of the Ferraros had engaged in other violent, criminal behavior. The complaint alleged these statements were republished or reaffirmed by agents and employees of Children's Hospital and/or Chadwick on October 10, 1983; November 2, 1983; January 31, 1984; October 9, 1984; and at various times and places between October 9, 1984, and December 1, 1985. The complaint alleged that as a result of defendants' statements, April was taken from the custody of her parents and made a ward of the juvenile court, which eventually exonerated the Ferraros of wrongdoing, dismissed the county's petition and

returned April to the custody of her parents on December 10, 1983.[1] At this time, the complaint alleged, the juvenile court advised the Ferraros to seek civil redress against Children's Hospital for malpractice; the Ferraros did so by mailing notices of professional negligence on March 5, 1984. The complaint further alleged that as a result of the defendants' republication of the statements, John and Michelle Ferraro were arrested on October 8, 1984, and charged with child abuse and murder. The complaint alleged the criminal prosecution continued through December 1985, when all charges were dismissed.

In response to the complaint, Chadwick and Children's Hospital filed a demurrer. The trial court granted the demurrer without leave to amend, explaining that Penal Code[2] section 11172, subdivision (a), provides absolute immunity from civil liability for medical providers involved in the reporting of suspected child abuse.

## DISCUSSION

Revising earlier law on the subject, in 1980 the California Legislature enacted the Child Abuse Reporting Law, section 11165 et seq., a comprehensive reporting scheme aimed toward increasing the likelihood that child abuse victims would be identified. (Stats. 1980, ch. 1071, § 4, pp. 3420 et seq.)[3] The Act requires persons in positions where abuse is likely to be detected to report promptly all suspected and known instances of child abuse to authorities for follow-up investigation. (See § 11166.) Among the mandated reporters are health practitioners, a category that includes physicians and surgeons. (§ 11165.8.) ■ ■■ ■■ The failure to make a required report is a misdemeanor, punishable by up to six months in jail or by a fine of $1,000, or both. (§ 11172, subd. (e).)[4] The Act also cloaks

[1] Pursuant to Evidence Code sections 452, subdivision (d)(1), and 459, we take judicial notice of the juvenile court dependency file (petition No. 131449). The dependency petition alleged that April came within the provisions of Welfare and Institutions Code section 300, subdivision (a), because she "had no parent or guardian actually exercising, willing to exercise and capable of exercising proper parental care and control, and because of said minor's age is in need of such care and control, in that on or about 10-10-83 the stepmother [Michelle Ferraro] and father [John Ferraro] subjected or exposed said minor's step-sibling, Douglas Yates to physical abuse and damage consisting of, but not limited to bruising to buttocks, severe head trauma resulting in step-sibling's death and the father was unable to protect the minor's sibling and said minor is in need of the protection of the Juvenile Court." The file indicates that on November 9, 1983, the juvenile court dismissed the petition on the recommendation of the social worker, without objection from the district attorney's office.

[2] All statutory references are to the Penal Code unless otherwise specified.

[3] In 1987, the law was renamed the Child Abuse and Neglect Reporting Act, which is reflected in section 11164. (Stats. 1987, ch. 1444, § 1, pp. 5368 et seq.) We will refer subsequently to this legislative scheme, both the 1980 enactment and later amendments, as the Act.

[4] A health practitioner who fails to make a required report may be liable in civil damages for any subsequent injury to the child. (*Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].)

mandated reporters with immunity from civil and criminal liability for making any report "required or authorized" by the Act. (§ 11172, subd. (a).)

The key issue in this case is whether the immunity provided by section 11172 covers the acts of Chadwick and Children's Hospital.

Section 11172, subdivision (a), provides in pertinent part: "No child care custodian, health practitioner, employee of a child protective agency, or commercial film and photographic print processor who reports a known or suspected instance of child abuse shall be civilly or criminally liable for any report required or authorized by this article."

*Storch* v. *Silverman* (1986) 186 Cal.App.3d 671, 675 [231 Cal.Rptr. 27], the first case analyzing this immunity provision, involved a lawsuit by a minor and her parents against a hospital and three physicians for medical malpractice and negligent infliction of emotional distress allegedly resulting from a negligent diagnosis of the minor and from the defendants' report to a child protective agency that the minor was a victim of child abuse. In an opinion authored by Justice Arabian, the Court of Appeal held section 11172, subdivision (a), granted medical practitioners absolute immunity from civil liability for reporting suspected child abuse. (*Storch, supra*, 186 Cal.App.3d at pp. 675, 679.) The *Storch* court, which examined the legislative history of the Act, said the immunity extends to situations in which the medical practitioner maliciously and knowingly submits a false report of child abuse with the intent to vex, annoy and harass an innocent party. (*Id.* at p. 681.) The *Storch* court also held the immunity statute defeated any action against the hospital that employed the physicians under a respondeat superior theory. (*Id.* at pp. 681-682.)

*Storch, supra*, 186 Cal.App.3d 671, was followed by *Krikorian* v. *Barry* (1987) 196 Cal.App.3d 1211 [242 Cal.Rptr. 312], which involved a cross-complaint by the operator of a preschool who was sued because of allegations that children at the school had been sexually molested. Among the cross-defendants was a psychologist who treated the children, determined molestation had occurred and reported it to authorities. The cross-complaint alleged the psychologist was negligent in her interviews, causing the children to make false accusations of child abuse. The *Krikorian* court, which also analyzed the legislative history of section 11172, held the absolute immunity provided by subdivision (a) of the section extended to "conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim or perpetrator of child abuse, performed in a professional capacity or within the scope of employment, as well as for the act of reporting." (*Id.* at p. 1223.)

Thus, *Storch, supra*, 186 Cal.App.3d 671, establishes that section 11172, subdivision (a), provides absolute immunity for a health practitioner who reports suspected child abuse pursuant to section 11166, subdivision (a), which deals with the initial mandated report to a child protective agency.[5] Further, *Krikorian, supra*, 196 Cal.App.3d 1211, establishes this absolute immunity also is applicable to preparatory activity associated with the mandated reporting.

 Here, we are concerned with a different aspect of the issue: Whether section 11172 cloaks the mandated reporter with immunity for activity *after* the report of suspected child abuse mandated by section 11166, subdivision (a), is made. For the reasons that follow, we conclude it does under the circumstances of this case.

The Ferraros concede Chadwick and Children's Hospital do not have any liability for making the initial report because it was required under the Act and therefore is protected by section 11172. But they contend the conduct alleged here goes beyond the reporting of child abuse mandated or required by section 11166, subdivision (a), and therefore is not protected by the immunity of section 11172.

However, section 11172, subdivision (a), provides mandated reporters shall not be held civilly or criminally liable "for any report required *or authorized*" by the Act. (Italics added.) Thus, we must discern the meaning of the phrase "or authorized" to determine whether the actions of Chadwick and Children's Hospital subsequent to the initial report were authorized under the Act.

As best as we can tell, the Ferraros urge us to interpret the phrase "or authorized" as surplusage. Such an interpretation would be contrary to established rules of statutory construction. "In construing the words of a statute . . . an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].) This cardinal rule of statutory construction leads us to the conclusion that the authors of the Act must have (1) contemplated mandated

---

[5] Section 11166, subdivision (a), provides in pertinent part: "[A]ny child care custodian, health practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment whom he or she knows or reasonably suspects has been the victim of child abuse shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident."

reporters would have occasion to make reports other than those required under section 11166, subdivision (a); (2) authorized reporting by mandated reporters other than that required by section 11166, subdivision (a); and (3) intended these authorized reports be protected by the same broad immunity that protects the required reports under section 11166, subdivision (a).

Other basic rules of statutory construction also lead us to conclude that section 11172, subdivision (a), provides immunity not only to "required" or mandated reporting but to another distinct category of reporting—that which is "authorized" by the Act. ■ As stated in *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]: "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citations.]" ■ Here, there is no dearth of material to ascertain the Legislature's purpose.[6] Perhaps the clearest statement is contained in the legislation itself; in enacting the Act in 1980, the Legislature explicitly stated: "In reenacting the child abuse reporting law, it is the intent of the Legislature to clarify the duties and responsibilities of those who are required to report child abuse. The new provisions are designed to foster cooperation between child protective agencies and other persons required to report. Such cooperation will insure that children will receive the collective judgment of all such agencies and persons regarding the course to be taken to protect the child's interest." (Historical Note, 51C West's Ann. Pen. Code (1982 ed.) § 11165, pp. 55-56; Stats. 1980, ch. 1071, § 5, p. 3425.)[7]

---

[6]See *Storch, supra,* 186 Cal.App.3d at pages 679-680 and *Krikorian, supra,* 196 Cal.App.3d at pages 1215-1218.

[7]Our conclusion that the term "authorized" has a meaning separate and distinct from "required" is bolstered when we consider the predecessor to section 11172. Former section 11161.5, which required physicians, among others, to report injuries to children that appear nonaccidental, provided that "[n]o person shall incur any civil or criminal liability as a result of making any report *authorized* by this section. . . ." (Stats. 1979, ch. 373, § 251, p. 1357, italics added.) In enacting the Child Abuse Reporting Law in 1980 (§ 11165 et seq.), the Legislature adopted a comprehensive scheme for the reporting of child abuse that is now contained in 31 separate statutes. For the immunity provision, the Legislature had before it "ready-made" language from former section 11161.5 that it could have appropriated. The Legislature in drafting section 11172 chose not to, changing the language from "authorized" to "required or authorized." We conclude the change must have some significance. " ' "Where changes have been introduced by amendment, it is not to be assumed that they were without design; usually an intent to change the law is inferred." [Citations.]' " (*Loew's Inc. v. Byram* (1938) 11 Cal.2d 746, 750 [82 P.2d 1].)

Thus, we decline the Ferraros' invitation to impute a nugatory significance to the phrase "or authorized" in section 11172, subdivision (a).[8] It is clear to us that the Legislature, intent on rectifying the problem of inadequate child abuse reporting, particularly by professionals, was determined to increase reporting by professionals of child abuse. The Legislature's solution in bestowing absolute immunity to the enumerated professionals was an attempt to remove one of the largest impediments to reporting—the fear of civil liability. (See State Bar of Cal., Rep. on Assem. Bill No. 2497 (1979-1980 Reg. Sess.) p. 2; *Storch, supra,* 186 Cal.App.3d at p. 680; *Krikorian, supra,* 196 Cal.App.3d at pp. 1216-1217.) Toward this end, the Legislature did not limit its grant of absolute immunity to "required" reports, but rather extended absolute immunity to "authorized" reports as well.[9]

However, we must further analyze section 11172. What does "authorized" mean in the context of the statute? When we look at other statutory provisions contained in the Act, it is clear the Legislature envisioned reporting other than that required by section 11166, which not only imposes a duty upon the mandated reporters but also criminalizes the failure to make the specified reports.

Section 11167, subdivision (b), provides: "Information relevant to the incident of child abuse *may* also be given to an investigator from a child protective agency who is investigating the known or suspected case of child abuse." (Italics added.) Obviously, the type of report or communication contemplated by this provision most often is going to occur after an initial report of suspected abuse made pursuant to section 11166 and an investigation is started. Section 11166, subdivision (g), further permits the disclosure of this information to the district attorney. Also, section 11167, subdivision (d), permits disclosure of the identity of the reporter to the district attorney in a criminal prosecution. Certainly, it is reasonable to infer the Legislature (1) anticipated that in the course of an investigation into suspected child abuse, the reporter—particularly if the reporter is a doctor—is going to be contacted and interviewed by the agency conducting the investigation and (2) sanctioned such communication between the reporter and the investigating agency. It is also reasonable to infer the Legislature foresaw the possibil-

---

[8] We note that in *Storch, supra,* 186 Cal.App.3d at page 678, the Court of Appeal rejected the notion that immunity from liability is coextensive only with the duty to report under section 11166.

[9] We note the Ferraros' reliance on *People* v. *Stritzinger* (1983) 34 Cal.3d 505 [194 Cal.Rptr. 431, 668 P.2d 738] and its progeny (*People* v. *Younghanz* (1984) 156 Cal.App.3d 811 [202 Cal.Rptr. 907]; *People* v. *John B.* (1987) 192 Cal.App.3d 1073 [237 Cal.Rptr. 659]) for the notion that the absolute immunity of section 11172 applies only to the required report of section 11166. The Ferraros are wrong. These cases deal with the psychotherapist-patient privilege or the physician-patient privilege and stand for the proposition that the duty to report under section 11166 takes precedence over the privilege. (See § 11171, subd. (b).)

ity of the reporter being contacted by the district attorney with respect to criminal investigations.

Communication between governmental agencies working in this field and health practitioners also is contemplated by section 11170, which requires the state Department of Justice to maintain an index of all reports of suspected child abuse submitted pursuant to the Act. Under subdivision (b)(1) of section 11170, a child protective agency investigating a case of child abuse must make available to the reporting health practitioner any information contained in the index that is relevant to the case. Under subdivision (b)(2) of section 11170, the investigating agency must inform the mandated reporter of the results of the investigation and any action the agency has taken with regard to the child or family.[10]

Paragraph XVIII of the Ferraros' complaint alleges various communications between Chadwick and law enforcement officials after the initial mandated report. We cannot tell from the complaint whether the communications were in response to law enforcement inquiries or whether the communications were initiated by Chadwick and/or Children's Hospital. We conclude in either event these communications by a mandated reporter to child protective or law enforcement agencies that are statutorily entitled to receive and investigate reports of child abuse are "authorized" communications or reports under the Act, and, therefore, were protected by the immunity of section 11172, subdivision (a).

Under the authority of *Storch, supra,* 186 Cal.App.3d 671, and *Krikorian, supra,* 196 Cal.App.3d 1211, the immunity of section 11172 for mandated reporters is absolute. The language of section 11172 lacks any express distinction between the immunity for "required" reports and the immunity for "authorized" reports, and we decline to usurp legislative prerogative and insert one. Further, our review of the Act does not disclose any legislative intent to give greater immunity to the "required" reports than to the "authorized" reports; rather, we conclude the intent was to immunize both types of reports equally—i.e., to bestow absolute immunity on each type when made by mandated reporters.

■ The Ferraros argue that after the juvenile court dismissed the dependency action concerning April, Chadwick and Children's Hospital no longer enjoyed immunity for their communications with law enforcement agencies concerning the death of Douglas. We disagree.

---

[10]The legislative goal of fostering cooperation between child protective agencies and the mandated reporters also is manifested in sections 11166.7 and 11166.8, which authorize counties to establish interagency teams to investigate suspicious child deaths with input from health practitioners.

First, we note nothing in the language of the Act would support the notion that dismissal of a juvenile court dependency action ends the immunity of section 11172, subdivision (a). Had the Legislature intended to limit the immunity in such a way, presumably it would have done so.

Second, the position urged by the Ferraros would blur the very real distinctions between dependency proceedings and criminal prosecutions. Here, the issue before the juvenile court was whether April should be returned to the custody of the Ferraros. ■ The purpose of a dependency proceeding is to protect the welfare of the child while safeguarding the parents' right to properly raise their child; it is not to punish the parents. (*In re La Shonda B.* (1979) 95 Cal.App.3d 593, 599 [157 Cal.Rptr. 280]; *Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 52 [141 Cal.Rptr. 273].) The issue in the criminal prosecution was whether Daniel's death resulted from child abuse by the Ferraros. The focus of a criminal prosecution is to determine whether criminal liability should be imposed upon the defendant. Certainly, the Legislature has intended for the issues of dependency and criminal liability to be litigated separately. (Compare Welf. & Inst. Code, § 300 et seq. with Pen. Code, § 15.)

■ The Ferraros' reliance on *Lockwood v. Superior Court* (1984) 160 Cal.App.3d 667 [206 Cal.Rptr. 785] is misplaced. In *Lockwood,* the Court of Appeal held a juvenile court's finding of no abuse in a dependency proceeding will preclude a subsequent criminal prosecution on the same evidence on the basis of collateral estoppel. We believe the *Lockwood* holding has relevance for the district attorney, who has total discretion whether to prosecute (see *People v. Adams* (1974) 43 Cal.App.3d 697, 707 [117 Cal.Rptr. 905]) and can consider the collateral estoppel aspect in exercising that discretion. However we do not read *Lockwood* as holding that a juvenile court's dismissal of a dependency proceeding automatically stops all criminal investigatory activity dead in its tracks.

Our conclusion that the dismissal of the dependency action does not end the mandated reporter's immunity for authorized communications also is in keeping with the stated legislative purposes of the Act to foster cooperation between child protective agencies and mandated reporters (Stats. 1980, ch. 1071, § 5, *supra*) and protect children from abuse (§ 11164). The Act contemplates criminal investigations of cases of suspected child abuse and possible prosecutions. (§§ 11166, subd. (g), 11167, subd. (d), 11167.5, subd. (b)(1), & 11170, subd. (b)(1).) Cooperation between the district attorney investigating suspected child abuse and mandated reporters—particularly health practitioners—would seem essential to the district attorney's ability to make intelligent decisions whether to prosecute. Eliminating at that stage the mandated reporter's absolute immunity would chill the cooperation

between the district attorney and the reporter, who in many cases would become reticent to supply additional information out of fear of exposure to liability. Thus, the district attorney's ability to prosecute child abusers would be seriously hampered and an important purpose of the Act would be defeated.

We realize the absolute immunity deprives the Ferraros of the right to judicial recourse. However, we have concluded the Legislature, in addressing the serious problem of child abuse, determined that bestowing absolute immunity upon the enumerated professionals for "authorized" as well as "required" reporting was appropriate. As the court in *Storch, supra,* 186 Cal.App.3d at page 681, observed: "We can conceive of a situation in which a medical practitioner maliciously and knowingly submits a false report of child abuse with the intent to vex, annoy and harass an innocent party. However, we feel confined by the legislative history of section 11172 to a result which grants total immunity to the mandated reporter."

## DISPOSITION

Judgment affirmed.

Kremer, P. J., concurred.

**NARES, J.**—I respectfully dissent.

The trial court entered judgment after sustaining a general demurrer without leave to amend to the Ferraros' initial complaint on the sole ground the conduct alleged is absolutely immune from civil liability under Penal Code[1] section 11172, subdivision (a). On review, the appellate court's role is well established. If we find any of the alleged conduct may not be subject to absolute immunity and if the complaint therefore states any viable cause of action against Chadwick/Children's Hospital, we should reverse the judgment.

## I. ABSOLUTE IMMUNITY

Initially the majority correctly notes the Legislature enacted the Child Abuse Reporting Law, section 11165 et seq., as "a *comprehensive reporting scheme* aimed toward increasing the likelihood that child abuse *victims would be identified.*"[2] (Maj. opn., *ante,* at p. 90, italics added.)

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] For ease of reference, we refer to the act as it existed at the time of the alleged conduct in the complaint except as noted.

The Ferraros' complaint alleges Chadwick/Children's Hospital reported to the proper authorities on October 9 or 10, 1983, their suspicions of suspected child abuse by the Ferraros identifying the Ferraros' son, Douglas, as the victim, who died at Children's Hospital on October 10. The complaint further alleges that as a result of Chadwick/Children's Hospital's statements, the child protective authorities took the Ferraros' daughter, April, from their custody, making her a dependent of the juvenile court.

Accepting these allegations as true for purposes of demurrer, the purpose of the Act was fulfilled, the authorities were notified and an identifiable possible victim of suspected child abuse, April, was placed in a position of safety. I would, therefore, agree with the majority that Chadwick/Children's Hospital's initial reporting, even if malicious and knowingly false and even if done with the intent to vex, annoy and harass the Ferraros, is afforded absolute immunity from criminal or civil liability under section 11172, subdivision (a).

However, I disagree that all postreporting conduct by Chadwick/Children's Hospital alleged in the complaint is similarly *absolutely* privileged as a matter of law, so as to support the sustaining a general demurrer without leave to amend. This is not to imply the alleged conduct is not protected; it may be.

If Chadwick/Children's Hospital merely responded to inquiries by investigative governmental agencies, then their republication of their statements may also be privileged as encompassed within the definition of section 11167, "Report; contents."

The conduct alleged in the Ferraros' complaint, however, far exceeds the bounds of reporting or responding to inquiries. Paragraph XIV alleges that Chadwick/Children's Hospital republished their statements regarding the Ferraros on October 9, October 10, and November 2, 1983, January 31, 1984, and at various times between October 9, 1984, and December 1, 1985.

Paragraph XV alleges that neither of the defendants, Chadwick or Children's Hospital, was under any duty to investigate possible criminal conduct after an initial suspected child abuse report was made. Paragraphs XVI and XVII allege that other physicians opined the Chadwick/Children's Hospital's statements regarding the Ferraros were inaccurate and that such opinions were communicated to Chadwick/Children's Hospital. Paragraph XVIII alleges that notwithstanding these communications, Chadwick/Children's Hospital republished their statements to law enforcement officials with the express intention that such statements be the basis

for commencement of juvenile intervention as to April as well as criminal prosecution of the Ferraros.

Without actually acknowledging these allegations the majority states, "We cannot tell from the complaint whether the communications were in response to law enforcement inquiries or whether the communications were initiated by Chadwick and/or Children's Hospital. We conclude in either event these communications by a mandated reporter to child protective or law enforcement agencies that are statutorily entitled to receive and investigate reports of child abuse are 'authorized' communications or reports under the Act, and, therefore, were protected by the immunity of section 11172, subdivision (a)." (Maj. opn., *ante,* at p. 95.)

I disagree, because the majority rewrites the Child Abuse Reporting Law, under the guise of statutory construction, to extend absolute immunity to conduct far exceeding the scope of that required or authorized by the act. The act, as a comprehensive reporting scheme, provides absolute immunity for mandated reporters "for any report required or authorized by this article." (§ 11172, subd. (a).) The word "authorized" means "permitted, allowed or sanctioned" by Article 2.5 of the Penal Code, the Child Abuse Reporting Law.

The duty of such mandated reporters is clearly set forth in section 11166, subdivision (a), which provides in part: "[They] *shall report* the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible *by telephone and shall prepare and send a written report* thereof within 36 hours of receiving the information concerning the incident." (Italics added.) There is no dispute the initial telephonic and written reports are absolutely protected. The act further provides in section 11171, subdivision (a) for immunity as to X-rays taken without parental consent "but only for purposes of diagnosing the case as one of possible child abuse and determining the extent of such child abuse." The taking of X-rays is, therefore, "authorized" by the act. Section 11171, subdivision (b) establishes an exception to the physician-patient privilege and psychotherapist-patient privilege for information "reported pursuant to this article," thus creating another authorized act immunized from liability. Finally, section 11172, subdivision (a) provides absolute immunity to mandated reporters "for any report required or authorized by this article" including the taking, causing to be taken, or disseminating of photographs of a suspected victim of child abuse without parental consent.

Thus, it is clear the Legislature chose to protect mandated reporters from civil or criminal liability for certain reporting and related incidental con-

duct specifically described in the act. The majority's opinion extends immunity to conduct outside the scope of the act, thereby inappropriately rewriting it.

The Ferraros' complaint, liberally read, alleges that Chadwick/Children's Hospital complied with their initial mandatory reporting roles but then went far beyond such roles voluntarily assuming the unauthorized roles of mandated reporters, investigators and prosecutors. Chadwick/Children's Hospital allegedly assumed such roles, hence they stand in the same position as any other person who institutes or causes meritless civil or criminal proceedings to be instituted against another person or persons. They should, therefore, be required to answer the allegations of the Ferraros' complaint on the merits.

In their rush to close the courthouse door on the Ferraros, the majority extends to Chadwick/Children's Hospital at the initial pleading stage an unlimited and heretofore unprecedented absolute immunity, shielding them from having to answer allegations of intentional, outrageous and malicious conduct without probable cause.

I have found no case extending to any person such unlimited absolute immunity, and the cases cited by the majority admittedly do not provide for such where the activity allegedly took place AFTER the reporting of suspected child abuse. I would, therefore, not grant absolute immunity for such alleged activity at the pleading stage under the guise of statutory construction which strains the interpretation of the word "authorized" to provide absolute immunity as a matter of law for activity to which the act does not extend.

If the evidence ultimately shows that Chadwick/Children's Hospital did not step outside their roles as mandated reporters and merely responded to inquiries by investigative governmental bodies, then they will have no liability. If, however, they inappropriately initiated civil or criminal proceedings or caused such proceedings to be initiated, then they will have to negate the Ferraros' allegations they acted intentionally, outrageously, maliciously and without probable cause. If they can do that they will have no liability and, in fact, will even be indemnified by the state for their attorney's fees. This indemnity arises whenever "the court has dismissed the action upon a demurrer or motion for summary judgment . . . or if he or she prevails in the action." (§ 11172, subd. (c).)

Although the Legislature has afforded mandated reporters full protection for compliance with the act, it has not extended such protection to conduct

alleged beyond the scope of the act. I would, therefore, reverse the judgment dismissing the complaint on the ground the alleged conduct is absolutely immune.

## II. STATUTE OF LIMITATIONS

As an alternative basis for affirming the sustaining of the demurrers to the first, second and third causes of action for emotional distress, Chadwick/ Children's Hospital contend these causes of action are barred by the one-year statute of limitations under Code of Civil Procedure section 340, subdivision (3). Chadwick/Children's Hospital claim the statute of limitations commenced on these causes of action on December 10, 1983, when the juvenile court dependency action was dismissed and the court advised the Ferraros to seek civil redress for medical malpractice.

At a minimum, Chadwick/Children's Hospital contend the one-year period began running on March 5, 1984, the date the Ferraros served notices of professional negligence on them. (Code Civ. Proc., § 364.) Neither contention has merit because the causes of action on the theories of emotional distress relate to their malicious prosecution cause of action. A cause of action for malicious prosecution must be brought within one year of the date of favorable termination of the civil or criminal proceeding which forms the basis for the subsequent malicious prosecution. The harm resulting from the maliciously instituted proceedings includes damages for emotional distress. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The complaint alleges the criminal proceedings were terminated on December 26, 1985; the complaint was filed on September 22, 1986, within the one-year statute of limitations. Therefore, on its face, the complaint is not barred as to the second, third and fourth causes of action.

April's first cause of action for damages merits a different result. First, April's claim for loss of parental consortium cannot stand in light of *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858]. Further, the first cause of action appears to seek damages for April's emotional distress resulting from the dependency proceeding which was dismissed on December 10, 1983. As pleaded, it is therefore barred by the one-year statute of limitations under Code of Civil Procedure section 340, subdivision (3). Nevertheless, I would grant the Ferraros leave to amend this first cause of action absent the claim for loss of parental consortium because they should be afforded at least one opportunity to cure the

statute of limitations' defect if they can. (*Larwin-Southern California, Inc.* v. *JGB Investment Co.* (1979) 101 Cal.App.3d 626, 635 [162 Cal.Rptr. 52].)

Accordingly, I would reverse the judgment dismissing the Ferraros' complaint and remand.

Appellants' petition for review by the Supreme Court was denied August 15, 1990.