702 So.2d 825 (1997)
STATE of Louisiana
v.
Charles W. SHIRAH, Jr.
No. Cr97-384.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1997.
*826 Michael C. Cassidy, District Attorney, Jennings, for State.
Edward K. Bauman, Lake Charles, for Charles W. Shirah, Jr.
Before THIBODEAUX, COOKS and SULLIVAN, JJ.
SULLIVAN, Judge.
Defendant, Charles W. Shirah, Jr., was charged by bill of information with two counts of molestation of a juvenile, in which *827 the incidents recurred during a period of more than one year, in violation of La.R.S. 14:81.2(A) and (D)(1), and with one count of molestation of a juvenile in violation of La. R.S. 14:81.2(A) and (B). After a bench trial, the trial court found defendant guilty on all three counts. The trial court sentenced defendant to serve five years at hard labor without benefit of probation, parole, or suspension of sentence, on each of the two counts of molestation in which the incidents recurred during a period of more than one year, to run concurrently with each other, and to serve an additional five years at hard labor on the remaining count to run consecutively to the five year sentences imposed on the other two counts. On appeal, defendant argues two assignments of error.

Facts
Defendant was convicted of molesting his two adopted daughters, J.S. and E.S.[1] The girls were the children of defendant's wife, Connie Shirah Hormell, and her previous husband, Tim Myers. The victims were eleven and nine years of age when they first reported the abuse.
Ms. Hormell testified that the children first reported the allegations of abuse on January 20 and 21, 1995. On January 20, Ms. Hormell had driven J.S. and some friends to Baton Rouge for an overnight field trip, leaving E.S. and her younger brother, defendant's biological son, at home in Jennings in the care of defendant. Beginning at 9:45 p.m., Ms. Hormell repeatedly attempted to telephone their home. Finally at approximately 11:30 p.m., E.S. answered the phone. According to Ms. Hormell, the child was extremely upset and told her mother that defendant had touched her "private parts." When Ms. Hormell confronted defendant on the phone with the child's accusations, defendant denied the incident and said E.S. was either lying or dreaming. Ms. Hormell left Baton Rouge immediately that night to return home. The next day, she took the two girls to see a doctor who examined E.S. and questioned both girls. At that appointment, J.S. revealed that defendant had also molested her.
Pursuant to La.Ch.Code arts. 322 through 329, the State introduced videotaped interviews with the two children and Officer Charlotte Hebert of the Jefferson Davis Parish Sheriff's Department. Officer Hebert conducted the interviews on February 16, 1995, less than a month after the allegations of sexual abuse surfaced. J.S., then eleven, reported that the assaults began when her younger brother was in the hospital. (Later at trial, Ms. Hormell testified that J.S.'s brother was hospitalized in November 1993.) J.S. stated that in the beginning both she and defendant were fully clothed; at first she thought they were just wrestling or playing. Over time, defendant's acts progressively increased to touching her vagina and breasts, putting his mouth on her breasts and stomach, and making her touch his penis. Defendant also masturbated in front of her and attempted vaginal intercourse once, although neither genital contact nor penetration ever occurred. Sometimes, J.S. smelled alcohol on defendant during the attacks. Although these incidents often occurred when her sister and brother were at home, J.S. did not believe the younger children witnessed any of the acts. J.S. once asked E.S. if defendant had ever touched her "private parts," and E.S. replied that he had not. J.S. could not approximate the date of the last assault, but she stated that it was before January 20, 1995, the day defendant assaulted E.S.
E.S., nine years old at the time of her taped interview, recounted the events of January 20, 1995. She and defendant were sitting in a chair, while her younger brother played a video game on the floor in the same room. Defendant covered her with a blanket, unzipped her pajamas, and touched her vagina. Although penetration presumably did not occur, E.S. said that this caused pain. Defendant also made her touch his penis with her hand. Later that evening, defendant called her into the bedroom, where similar events occurred. At some point, E.S. began to cry. When she told defendant that she was crying because he had touched her "private parts," defendant responded "no, I didn't." E.S. reported defendant's actions to *828 her mother over the telephone that evening, and after the call, defendant told her that she was "starting some sh_t." E.S. said that defendant had never previously assaulted her and that he never did again because he moved out of the house. E.S. had never witnessed defendant assault either her sister or her brother.
At trial, Ms. Hormell testified that defendant admitted the molestation, stating that he was beginning to remember some of the incidents and describing details similar to those reported by the children. Additionally, defendant wrote a poem in which he expressed remorseful statements such as "I must pay for betrayal and crime" and "[i]t is so hard for me to imagine that I could destroy all of you in this fashion." Defendant denied the poem pertained to the molestation of his children or any feelings of guilt related thereto.
From February 1995 to April 1995, defendant participated in a treatment program for sex offenders at Professional Counseling Specialists, a privately-owned facility. Defendant received individual counseling from Troy Mire, a board-certified social worker, and attended group sessions. At trial, the State introduced the deposition of Mr. Mire, who testified that on more than one occasion in the counseling sessions, defendant effectively admitted that he had molested his daughters.
Attached to Mr. Mire's deposition was a form that defendant filled out but did not sign. On the form, dated February 6, 1995, defendant responded to the question, "What are the main reasons you decided to come for counseling?" by writing, "My children were sexually molested by me." Mr. Mire also acknowledged that defendant made statements denying the charges and claiming that he suffered memory loss caused by chronic alcoholism. Mr. Mire diagnosed defendant as a pedophile and an alcoholic.

Sufficiency of the Evidence
In his first assignment of error, defendant contends that the evidence adduced at trial was insufficient to support his conviction. To obtain a conviction, the State must prove the elements of a crime beyond a reasonable doubt. La.R.S. 14:81.2(A) defines the crime of molestation of a juvenile as follows:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
To subject defendant to enhanced penalties under La.R.S. 14:81.2(D)(1), the State was also required to prove that the incidents of molestation involving J.S. recurred for a period of more than one year.
The defense stipulated that defendant was over the age of seventeen, and the victims testified that they were eleven and nine when they first reported the abuse. The acts alleged by the children, including the defendant's touching of their genitals, forcing them to touch his penis, masturbating in front of J.S., and attempting vaginal intercourse with J.S., clearly constitute "lewd or lascivious" acts committed "with the intention of arousing or gratifying the sexual desires of either person." See State v. Hillman, 613 So.2d 1053 (La.App. 3 Cir.), writ denied, 617 So.2d 1181 (La.1993). The victims testified that defendant used force and intimidation in the commission of these acts. Furthermore, the State presented evidence that the abuse of J.S. began in November 1993 and continued until some point before January 20, 1995, the date the abuse was revealed.
In his brief, defendant does not argue that the State failed to prove any specific element of the crime. Instead, he contends that the evidence was insufficient to prove that any molestation had occurred. Defendant contends that the children's accusations resulted from their mother's obsessive fear that her children would be molested. At trial, defendant testified that Ms. Hormell frequently asked the girls if anyone had touched their *829 "private parts" and that she coached them prior to their videotaped interviews. He also presented evidence that Ms. Hormell's first husband was investigated and cleared of abuse of J.S. On cross-examination, Ms. Hormell acknowledged that the State authorities took J.S. and E.S. into their custody during an investigation, but she believed the charges involved physical rather than sexual abuse. Defendant also presented the testimony of three witnesses who attested to Ms. Hormell's poor reputation and untrustworthiness.
Defendant further maintained that any admissions he made in the counseling program were the result of his desire to keep his family together. He testified that Ms. Hormell threatened to take the children away if he did not participate in the program but that Mr. Mire insisted that any counseling was contingent upon an admission of guilt. He testified that he stopped attending the counseling sessions when he realized that Ms. Hormell had no intention of allowing him to see the children. In his deposition, Mr. Mire testified that admissions of guilt are not required for counseling but that they are "part of the road to recovery."
Defendant is essentially challenging the credibility of the victims and of his ex-wife. Determinations of credibility are properly left to the discretion of the trier of fact; absent compelling circumstances, an appellate court will not disturb a trial court's ruling. See State v. Davis, 95-801 (La.App. 3 Cir. 12/6/95), 664 So.2d 821. Although defendant contends Ms. Hormell coached her children, he does not dispute that the first allegations of abuse were made while his ex-wife was out of town. In finding defendant guilty, the trial judge made the following comments:
Well, cases of this nature are very difficult for all of the people concerned. I've listened very carefully to all of the testimony and have read the deposition of Mr. Mire. I must say that I was impressed with the girls' testimony. I find them to be credible witnesses. I find that they were telling the truth. I see no reason that they said what they said other than the fact that they were telling the truth. After hearing and considering all of the evidence, I find that the State has proven to my satisfaction beyond a reasonable doubt each and every element of the charges ofof all of the charges, and I, therefore, find the defendant guilty as charged in both bills of information.
As the transcript indicates, the trial court afforded great weight to the videotaped statements of the children. The trial court's decision to credit the victims' accounts of abuse was not irrational, upon consideration of the entire record.
This assignment of error lacks merit.

Excessive Sentences
On appeal, defendant has failed to brief this error; therefore, it is considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4; State v. Morris, 614 So.2d 180 (La.App. 3 Cir.1993).

Motion to Suppress
In his final assignment of error, defendant argues that the trial court erred in denying his motion to suppress the statements he made in the counseling sessions with Mr. Mire, the social worker. Defendant argues that he was not sufficiently warned that anything he said to Mr. Mire could be used against him in a criminal proceeding.
At the hearing on the motion to suppress, defendant argued that the statements were not voluntary because Ms. Hormell coerced him into counseling with promises that he would not be prosecuted if he cooperated and because Mr. Mire led him to believe that an admission of guilt was required for counseling. Defendant further testified that he did not recall Mr. Mire warning him that the statements were not confidential and that they could be used in a criminal proceeding. In denying the motion, the trial court found that the State made no promises or inducements, such as a promise not to prosecute, in exchange for his participation in the counseling program. At trial, the State then introduced Mr. Mire's deposition as well as several documents related to the counseling program.
In his deposition, Mr. Mire testified that defendant made several admissions of guilt, *830 although defendant also denied the molestation at other times. Initially, defendant told Mr. Mire that he did not remember molesting the girls, but he had dreams that he did. In later therapy sessions, defendant said that he was "convinced" that it happened because his "kids are not liars." Defendant also told Mr. Mire that he manipulated circumstances to be alone with his daughters to molest them.
Before counseling defendant, Mr. Mire required him to sign a "Waiver of Confidentiality" form. Mr. Mire testified he clearly explained that whatever defendant told him could be used in a criminal proceeding. Mr. Mire said that he reviewed the form with defendant, had him read it, then had him repeat its substance in his own words. Mr. Mire also denied that he required an admission of guilt before he would treat someone, but he admitted his clients were under pressure to admit as part of the recovery process.
Generally, communications made to a board-certified social worker are privileged and may not be disclosed by the social worker. La.R.S. 37:2714; La.Code Evid. art. 510(A)(4)(c), (B)(1), and (C)(1). However, the Code of Evidence includes an exception in criminal cases to the social worker-patient privilege for any communications relevant to a child abuse investigation or prosecution. La.Code Evid. art. 510(C)(2)(f). See also La.R.S. 14:403(B), which provides:
In any proceeding concerning the abuse or neglect or sexual abuse of a child or the cause of such condition, evidence may not be excluded on any ground of privilege, except in the case of communications between an attorney and his client or between a priest, rabbi, duly ordained minister or Christian Science practitioner and his communicant.
(Emphasis added.)
Louisiana's Child Abuse Reporting Law requires social workers and other designated "mandatory reporters" to report suspected child abuse to specified state authorities. La.Ch.Code arts. 603(13)(b) and 609(A)(1). A mandatory reporter is subject to criminal penalties if he or she fails to make such a report. La.R.S. 14:403(A)(1).
In summary, a social worker, such as Mr. Mire, by law must report suspected child abuse, under the penalty of criminal prosecution for failure to make such a report. Furthermore, any statements made during counseling with the social worker will not be excluded in a criminal proceeding against the patient on the basis of a social worker-patient privilege or any other privilege of confidentiality. See State v. Bellard, 533 So.2d 961 (La.1988); State v. Rupp, 614 So.2d 1323 (La.App. 3 Cir.1993).
Defendant argues that a patient should be expressly informed that any statements concerning child abuse made to a social worker or other "mandatory reporter" are not privileged and can be used against the patient in a criminal prosecution. Analogizing the situation to an interrogation in which the State is required to Mirandize persons prior to questioning, defendant contends that constitutional rights, such as the privilege against self-incrimination, are threatened by Louisiana's mandatory procedure, which he claims effectively eliminates the privilege of confidentiality.
Defendant's argument appears to be res nova in Louisiana. However, California courts have dealt with similar challenges to their child abuse reporting statute. In People v. Younghanz, 156 Cal.App.3d 811, 202 Cal.Rptr. 907 (4 Dist.1984), the defendant, who had voluntarily sought counseling, initially disclosed to a student counselor that he had been sexually molesting his daughter for several years. The student counselor referred the situation to the clinic's director, a psychologist, who warned the defendant at the next counseling session that all instances of child abuse would be reported to state authorities. The defendant then discussed the details of the sexual abuse with the psychologist, who in turn reported the abuse to the state. In the ensuing criminal proceedings, the defendant made several constitutional challenges to California's Child Abuse Reporting Act.
The California appellate court first rejected the defendant's argument that his right to privacy under the due process clause had been violated. Because the right to seek a cure for one's illness was not fundamental, *831 the court declined to apply the strict scrutiny analysis to the claim. Instead, under the rational basis test, the court found that the statute was reasonably related to a legitimate state goal, that of protecting the welfare and safety of children. Therefore, the mandatory reporting requirements were a constitutionally permissible intrusion upon the right to privacy.
In considering Younghanz's claim that his privilege against self-incrimination under the Fifth Amendment of the United States Constitution had been violated, the California appellate court rejected the argument that the mandatory reporting act transformed the psychologist into a state agent. The court reasoned that the statute only required the psychologist to make an initial report and did not impose investigative duties on him:
In order to preserve the possibility of meaningful therapy for the patient, a psychologist need not reveal "details given to him by the adult patient in subsequent session...." Therefore, the statute does not inhibit the psychologist in treating the patient and the overriding purpose of obtaining information from the patient is to provide treatment rather than to enforce the law.
Id. at 818, 202 Cal.Rptr. at 911 (citations omitted).
However, with respect to whether or not a patient should be advised of the mandatory duty to report child abuse, the California court stated as follows:
In order to protect a patient's expectation of privacy regarding the seemingly therapeutic and confidential therapy session, however, the therapist should warn the patient of his or her statutory duty to testify against the patient concerning instances of child abuse. If the patient then chooses to continue with the therapy session, he or she waives any right to later challenge the admissibility of the incriminating evidence in court.
Id. (citations omitted).
Because the defendant was in fact informed by the psychologist that instances of child abuse would be reported to state authorities and the defendant nevertheless disclosed the incriminating information, the Younghanz court held that the defendant had waived the right to object to the admissibility of the psychologist's testimony.
The case sub judice is factually similar to Younghanz in that both defendants voluntarily sought counseling and both were warned of the non-confidentiality of the sessions. However, we note two important differences. First, Mr. Mire's actions went beyond his duty to file an initial report. In a two-page letter to the district attorney, Mr. Mire disclosed the substance of all counseling sessions with defendant, offered his suggestions on appropriate treatment and criminal punishment, and acknowledged that one purpose of his program was "to assist with the legal system regarding decisions." Second, the waiver of confidentiality forms signed by the defendant are both ambiguous and inaccurate. The "Acknowledgment of Intent" section states that the purpose of the release is not to gather information against defendant and that information will not be released unless necessary, appropriate, or compelled by the court. However, the "Waiver" section suggests that such information will automatically be released to authorities. Additionally, the "Waiver" section incorrectly quotes the language of La.R.S. art. 14:403(B). Instead of informing the patient that "evidence may not be excluded on any ground of privilege" in a child abuse or neglect case, the form says the opposite. As written, it provides that "evidence may be excluded." (Emphasis added.)
Notwithstanding these potentially significant defects, the record as a whole indicates defendant was sufficiently warned of the non-confidential nature of the communications and their possible use in a subsequent criminal prosecution. Mr. Mire's testimony, particularly where he states that he had defendant repeat the substance of the form in his own words, convinces us that the form's typographical error did not mislead this defendant.
Even if Mr. Mire's substantial involvement in defendant's prosecution could be considered as part of the State's investigation, we find no evidence that defendant was ever in the State's custody so as to trigger *832 the protections of Miranda. In Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) the United States Supreme Court held that a defendant must be Mirandized before a court-ordered, custodial psychiatric evaluation. In the instant case, defendant admitted that he had no contact with the district attorney's office before he sought counseling and the record reveals no State involvement until after defendant left the program.
In conclusion, we agree with Younghanz that social workers and other mandatory reporters should advise patients of the statutory duty to report instances of child abuse, the non-confidential nature of communications, and the potential use of the communications in a criminal prosecution. Because defendant did receive adequate warnings, he may no longer object to the admissibility of Mr. Mire's deposition.
For the first time on appeal, defendant argues that La.R.S. 14:403(B) should be declared unconstitutional on its face. A facial challenge to the constitutionality of a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. State v. Powdrill, 95-2307 (La.11/25/96), 684 So.2d 350; State v. Brown, 94-1290 (La.1/17/95), 648 So.2d 872, citing United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Defendant has clearly not met this heavy burden.
This assignment of error lacks merit.

Decree
For the above reasons, defendant's convictions are affirmed.
AFFIRMED.
NOTES
[1] To protect the juveniles' identities, we will use their initials rather than their names.