Filed 7/16/25 P. v. Huff CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br>v.<br>DARYL LEON HUFF, II,<br>Defendant and Appellant. | A169954<br><br>(Napa County<br>Super. Ct. No. 21CR002519) |

Daryl Leon Huff was charged with committing two felonies on March 24, 2021: assault by means likely to produce great bodily injury (Penal Code, § 245, subd. (a)(4));[1] and unlawful use of teargas (§ 22810, subd. (g)(1)). In 2024, a jury convicted Huff of both offenses. The trial court suspended imposition of sentence and placed Huff on probation for a period of two years. Huff appeals, arguing the court abused its discretion by denying his request to classify his offenses as misdemeanors. (See §17, subd. (b)(3).) We affirm.

**FACTS AND PROCEDURAL HISTORY**

The incident that led to Huff's convictions occurred at the Farmstead restaurant in St. Helena on the afternoon of March 24, 2021. At trial, the prosecution presented evidence that Huff and four friends were intoxicated

---

[1] All further statutory references are to the Penal Code.

1

when they arrived at the restaurant that day. The group was seated on the back patio and their server brought them complimentary food, hoping to forestall the types of "eruptions" that can happen with inebriated guests. Huff and his friends were loud, rude to the staff, complained about the food, and played music from one of their cell phones even though music was already playing on the patio.

Lance Buckeldee testified that when Huff's party arrived at the Farmstead, he and his wife were enjoying a late lunch while their seven-week old baby slept in her stroller. Huff and his friends were seated nearby, on the opposite side of a small hedge. They were loud and obnoxious; they argued with their waiter; and they threw chicken bones on a patch of dirt by the baby's stroller. At some point, Buckeldee asked them to quiet down. One or more of the people in Huff's group responded by telling Buckeldee that he could not tell them how to talk. Buckeldee attempted to explain that he and his wife were trying to have a conversation and could not hear each other, and that they had their baby with them. Huff responded, "[W]e don't give a shit about your baby." Buckeldee said, "I do" and something like, "I need to change the table now." As Buckeldee was walking towards the host stand, Huff intercepted him and sprayed pepper spray in his eyes and face.

The prosecution elicited testimony from other restaurant patrons who witnessed Huff assault Buckeldee. One of those witnesses testified that after Huff sprayed Buckeldee, Huff walked around the patio and threatened to spray another patron before leaving the restaurant. The patron had asked Huff what was "going on," and Huff responded, "Do you want to get sprayed too?" [2]

---

[2] At trial, the court admitted evidence of a cell phone video that captured Huff threatening the other patron.

Sergeant Peterson from the St. Helena Police Department testified that he and his partner were dispatched to the Farmstead at around 4:00 p.m. on the day of the incident, in response to a report of a fight. A restaurant patron approached the officers in the parking lot and reported that the alleged suspect had boarded an open air "limo bus" that was parked in the lot. Peterson went to the bus while his partner went into the restaurant. After a brief conversation with the driver, Peterson made contact with Huff, who appeared "[p]retty relaxed," and was focused on his cell phone. Peterson asked if Huff had any issues with anybody in the restaurant. Huff responded that his only issue was with his server. At some point other members of Huff's group joined the conversation, which was recorded on the officer's body camera. Someone from Huff's group told Peterson that Buckeldee had been loud and aggressive with them, and that a man that was not in their group had sprayed Buckeldee with pepper spray.

At trial, the defense argued that Huff did not commit any crime during the March 2021 incident but instead acted in self-defense when Buckeldee instigated a physical altercation. To support his self-defense claim, Huff called two witnesses who had been with him during the incident. Huff's friends testified that they felt their server at the restaurant had racially profiled their group, and that Buckeldee made provocative and racist statements prior to standing up and approaching their table in an aggressive manner. Huff's witnesses did not testify that Buckeldee physically touched Huff, at any time.

On January 16, 2024, the jury was instructed, heard closing arguments, and deliberated for approximately two hours before convicting Huff of both charged offenses: assault likely to cause bodily injury and unlawful use of tear gas. Huff was sentenced on February 27, 2024.

3

At the sentencing hearing, Huff made an oral request to reduce his crimes to misdemeanors pursuant to section 17, subdivision (b) (section 17(b)). The People opposed the motion and before ruling the court allowed Huff to make a statement. Huff apologized to the court, and talked about efforts he had made to improve himself. However, Huff did not squarely accept responsibility for his crime. "I felt like they ruined our day; we ruined their day," Huff said. "It was a bad day for both of us."

The court denied Huff's request to reduce his crimes to misdemeanors, finding that the maximum probation term for a misdemeanor was "too short," given that Huff had significant anger management issues. However, the court also denied the prosecutor's request to impose a one-year jail term, telling Huff, "I don't feel that's appropriate either. I want probation hanging over your head, to make sure you get the anger management you need." Ultimately, the court suspended imposition of sentence pending completion of 120 community service hours, and placed Huff on formal probation for a period of two years.

## DISCUSSION

Huff argues the trial court abused its discretion by classifying his " 'wobbler' " offenses as felonies. Wobblers are crimes that are by statute "punishable as either a felony *or* a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail and/or by a fine." (*People v. Park* (2013) 56 Cal.4th 782, 789; see *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974 (*Alvarez*).) Huff's current offenses are both wobblers. (§§ 245, subd. (a)(4); 22810, subd. (g)(1).)

The trial court's decision whether to reduce to a misdemeanor an offense that was charged as a felony is reviewed for abuse of discretion. (*Alvarez*, *supra*, 14 Cal.4th at p. 981.) Although this standard is "extremely

4

deferential," the record should reflect that the court conducted an "intensely fact-bound inquiry," and gave due consideration to all relevant factors, including the defendant's criminal history and the safety of the public. (*Id*. at pp. 981–982.)

Huff fails to show the trial court abused its discretion here. Prior to imposing sentence, the court observed that Huff appeared to have "come a long way" since the incident occurred, and it was impressed by Huff's family support system. For these reasons, the court did not impose a prison sentence or year-long jail term. But, for Huff's own sake and the sake of the community, the court elected to impose a two-year probation term so that Huff could get control of his anger. The court expressed serious concern about video evidence of the current incident, which showed that Huff was out of control and "really raging." The court also found that Huff had a prior misdemeanor assault conviction that involved "more than an element of anger." After considering all these relevant facts, the court concluded that a felony classification was warranted because a misdemeanor classification would result in "too short of a probationary term" to address Huff's anger management problems.

Huff argues that the trial court made its classification arbitrarily because "*all of the relevant material facts*" support a misdemeanor classification. According to this argument, the court's ruling is inconsistent with three facts established by the record. First, the probation department reported that Huff was not found to have violated any laws during the lengthy period that he was released on his own recognizance while awaiting trial. But the record shows that the court did consider the fact that Huff had come a long way, as we have noted. Nevertheless, there were ongoing

5

concerns about Huff's inability to manage his anger, a fact Huff all but ignores on appeal.

Second, Huff points out that prior to trial, the prosecutor offered him a misdemeanor plea bargain. Importantly though, plea negotiations are fundamentally different from sentencing decisions made by a court after the defendant has been convicted. Huff cites no authority suggesting that a prosecutor's plea offer has any effect on the scope of judicial discretion under section 17(b). (See *Alvarez, supra*, 14 Cal.4th at p. 976 ["trial court's exercise of discretion pursuant to section 17(b) does not involve 'the prosecutor's consent to the disposition of a criminal charge pending before the court' "]; *People v. Adams* (1974) 43 Cal.App.3d 697, 707 [district attorney's charging authority "not in any way an exercise of a judicial power or function"].)

Third, Huff relies on evidence that while he awaited trial, he invested three years on a path toward self-improvement, which made his plan to become a dental assistant an achievable goal at the time of sentencing. Huff posits that the court's refusal to reduce his felony convictions could derail his laudable plan, which is why the probation department recommended a misdemeanor disposition. This argument is based on a misreading of the record; the department recommended a probation term of two years, consistent with punishment for a felony. (§ 1203.1) Moreover, although Huff's self-improvement efforts were relevant, and properly considered by the trial court, we note they did not include any voluntary steps to address his anger issues. And as the court pointed out at the sentencing hearing, Huff "blamed the victim," which raises additional concern about his apparent lack of remorse about the assault. Finally, Huff appears to overlook that his felony convictions can still be reduced to misdemeanors should he successfully complete probation. (§ 17(b)(3).)

Taking a different tack, Huff argues that the trial court's sentencing decision constituted "an arbitrary circumvention of the law." In Huff's view, the court's expressed desire to impose a longer probation period proves that it circumvented the Legislature's determination to limit the period of probation for a misdemeanor to one year. This argument fails to the extent that it rests on an assumption that Huff was entitled to have his felony convictions reduced to misdemeanors. "Had the Legislature intended for the relief of section 17(b) to be mandatory under any circumstances, it would have made that intent plain in the statutory language." (*People v. Tran* (2015) 242 Cal.App.4th 877, 892.) Here, the facts before the trial court supported its discretionary decision not to reclassify Huff's felonies.

To be sure, courts should not "reason backwards" to justify sentencing decisions; an attempt to "justify a particular, arbitrarily chosen length of sentence" without regard to the individualized factors of the case would be an abuse of discretion. (*People v. Dent* (1995) 38 Cal.App.4th 1726, 1731.) In *Dent*, for example, the trial court classified a burglary offense and a petty theft offense as misdemeanors "solely" because of "a personal antipathy for the effect that the three strikes law would have on defendant," with individualized considerations "shunted into the background." (*Ibid.*) But in this case, the trial court did not reason backwards in an attempt to justify an arbitrary decision. It did nothing to suggest that it believed the Legislature made misdemeanor punishments "too short" categorically. Instead, the court found that the maximum probationary sentence for a misdemeanor would be "too short" here, considering the particularities of this defendant and this case.

## DISPOSITION

The judgment is affirmed.

_TUCHER, P. J._

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

_People v. Huff_ (A169954)